[No. 16640.   Department One.   February 23, 1922.]

PUBLIC SERVICE COMMISSION *et al., Appellants,* v. THE
STATE OF WASHINGTON, *on the Relation of Great
Northern Railway Company, Respondent.*[1]

CARRIERS (6)—REGULATION OF RATES—PREFERENCES AND DISCRIMI-
NATIONS. The public service statute does not contemplate that the
charge made by a carrier for a particular class of service shall al-
ways be exactly the same to all shippers, but it does require the
fixing of a tariff which is general and public, rather than individual,
and that shipments under it be made according thereto, and not
according to exceptions to it.

SAME (6). The fact that a timber company at its own expense
furnishes facilities for the shipment of its logs, such as constructing
steel bunks on the cars, providing train loads of logs to the rail-
road, which does away with switching, coupling and spotting of cars
and furnishes extra help in unloading its cars, thus enabling each
car to be loaded and unloaded once in each 24 hours, for which
service it is charged the same freight rates as other shippers who
do not furnish such facilities, does not show discrimination against
it in favor of such other shippers.

SAME (6). A freight charge to a shipper furnishing train load
lots of a less rate than to a competitor furnishing less than train
load lots is unlawful, as in effect allowing lower rates upon a con-
dition which only a few shippers can comply with.

SAME (3-1, 6)—REGULATION—POWERS OF COMMISSION—DISCRIMI-
NATION. A public service commission in fixing freight rates may,
under certain conditions, take into consideration things done by
shippers which would reduce the cost of transportation, provided
they are of such importance as to distinguish such shippers from
others, but they should be individual acts of material consequence
and not a number of acts each of small significance.

SAME (3-1, 6). Where a public service commission, in determin-
ing the fairness of a carrier's rate schedule, undertakes a compar-
ison with the charges of other carriers, it should take into consid-
eration such circumstances as the distance of the haul, the amount
of competition, the amount of money invested in the particular
road bed and equipment, and other like things.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered July 8, 1921, re-

[1]Reported in 204 Pac. 791; 207 Pac. 688.

versing an order of the public service commission fixing rates for hauling logs, after a hearing before the court. Remanded for further proceedings.

*The Attorney General* and *Raymond W. Clifford, Assistant (Cooley, Horan & Mulvihill,* of counsel), for appellants.

*Thomas Balmer* and *Edwin C. Matthias,* for respondent.

*Geo. T. Reid, C. H. Winders,* and *L. B. da Ponte, amici curiae.*

BRIDGES, J.—This is a rate making case. The Wallace Falls Timber Company is engaged in the logging business near the town of Gold Bar, in Snohomish county, Washington. It has been in the habit of shipping its logs by the railroad of the respondent to the city of Everett, a distance of approximately 30 miles. On the 26th of August, 1920, the respondent filed with the public service commission of this state (now the department of public works) its schedule or tariff of rates for hauling logs from Gold Bar to Everett. The charge fixed was $2.27 per thousand feet, board measure, log scale. Previously the charge for the same service had been $1.85 per thousand feet. After the filing of the new schedule, the Wallace Falls Timber Company made complaint to the public service commission on the ground that the charge of $2.27 per thousand feet was unreasonable, unjust, unfair, discriminatory and unlawful. After a hearing, the commission ordered the respondent to cancel and annul its schedule fixing the tariff of $2.27, and prescribed a rate of $1.85 per thousand feet, and directed the respondent to file a schedule to that effect. Thereafter the respondent here sued out a writ of review in the superior court of Thurston county against the public serv-

ice commission and its members, and after a hearing that court reversed and set aside the order made by the commission. The latter has appealed to this court.

The findings of fact made by the commission are, in part, to the effect that the timber company is the owner of a large amount of standing timber in the vicinity of Gold Bar, from which station the logs manufactured therefrom by it are transported to tide water at Everett; that the timber company so carries on its business that logs to be transported by the railroad company are delivered to it by the timber company "in full train load lots, fully made up and prepared for immediate movement, no switching, coupling or spotting of cars being necessary on the part of the railroad company"; that at Everett the timber company has so arranged its dumping and unloading facilities that cars loaded with logs are immediately dumped and unloaded upon their arrival at Everett, and that each car in the service is loaded and unloaded once in each 24 hours; that the timber company maintains a night service in dumping and unloading cars, at a monthly cost to it of approximately $400 over and above the ordinary and usual expenses in connection with the unloading of cars; that the timber company has expended about $250 per car in equipping the cars furnished to it by the railroad company, with steel bunks and stakes, which improvements make less repairs for respondent; that, by reason of the manner in which the timber company conducts its logging business, the railroad company is enabled to "transport said logs at less cost and expense to it than is ordinarily incurred by said railroad company in the transportation of logs of companies which do not conduct their business in the manner aforesaid, and which do not furnish and maintain the equipment hereinbefore referred to";

that the charge of $2.27 per thousand feet "is in excess
of the rates charged by other like carriers for log hauls
of similar distances in the state of Washington; that
the commission is satisfied that, because of the way in
which the timber company does its business and fur-
nishes logs for transportation, the railroad company
can transport the logs at a materially lower rate than
$2.27, and that "the logging rates of other railroads
for transporting logs for similar distances in the state
of Washington are approximately $1.85 per thousand
feet . . . which would be and is a reasonable rate
to be charged and applied in this case for transporting
logs from Gold Bar to tide water at Everett."

The respondent contends that, in fixing the rate in
this case, the commission had no right to take into con-
sideration many of the matters shown in the findings,
and that it acted on a fundamentally wrong idea or
basis.   On the other hand, the commission contends
that, since the cost of transportation is an important
feature of rate making, it was not only proper but
essential that it consider and be influenced by such acts
and services of the individual shipper as tended to re-
duce the cost of transportation.

It has long been recognized that rate making is far
from a scientific process.   The general purpose of the
public service act was to put a stop to certain well-
known abuses which had already grown up in the busi-
ness of transportation, and to make it impossible, as
nearly as might be, for other similar abuses to be car-
ried on in the future.   According to its provisions,
rates should be, as nearly as possible, just and reason-
able to all parties concerned, and all persons shipping
similar products, under similar circumstances, for like
distances should be treated alike as nearly as possible,
and that there should be no rebates, and that there

should be no discrimination in favor of one shipper and against another. We are satisfied that, in reaching its conclusions, the commission erroneously considered certain conditions found by it to exist, such as that the timber company furnished train loads of logs, did not require switching, furnished extra help in unloading the cars, and at its own expense constructed steel bunks on the cars furnished by the respondent.

(1) In the first place, the public service statute does not contemplate that the charge made by a carrier for a particular service shall always be exactly the same to all shippers. Such a result, in the nature of things, would be impossible of accomplishment. It hopes to accomplish general and not exact justice. The schedules provided by the statute to be filed contemplate a tariff to be charged for a service which is general and public, rather than individual—a service to the many and not to the few. It contemplates that, so long as the schedule or tariff is in force, shipments under it must be made according thereto, and not according to exceptions to it. If the schedule is to be one for the public, then manifestly it cannot take into consideration the numberless small differences in shipment. The business involved here will serve to illustrate the point we have in mind. Suppose there are several shippers to and from the same points. One furnishes full train loads, improved and expensive bunks, extra service at the unloading place, and does not require any switching; another furnishes all these things but the extra service in unloading, another all but the improved bunks, another all except the train loads, another all but the switching. Each shipper would thus do something which would tend to reduce the haul cost. The difference is in degree only. If all these things must be considered in filing schedules or in fixing rates, then there would have to be as many different schedules or

rates as there are shippers. Manifestly, such a procedure would be so heavy as that it would fall because of its weight. Schedules would be for individuals and not for the public—would be for a private and not a public service. In fixing rates the commission would be required to take into consideration every feature which tended to lessen the cost of transportation.

(2) It is perfectly manifest that the things which the timber company does, as found by the commission, are done by it more for the purpose of making it possible for the carrier to give it better and increased service than for the purpose of lessening the cost of the transportation. If the timber company thus adds to its cost, it is repaid by receiving more service, and if the respondent can, because of what the shipper does, carry the product at a somewhat less cost than otherwise, it repays the difference in more competent service. If it cost the respondent something less to transport the logs of the timber company than of some rival company, the difference is equalized by the former receiving a better service than the latter. So considering the question, it cannot be said that the timber company is being discriminated against in favor of some other shipper, or that the railroad should transport its logs at a price less than that charged to a rival company who does not do the things which would give it the more efficient service that the timber company gets.

(3) The commission should not have considered the fact that the timber company shipped by train loads, thus tending to make the cost of transportation less. The various commissions and the courts have held that to charge one furnishing train load lots a less rate than a competitor furnishing less than train load lots is unlawful because it is in effect ''allowing lower rates

upon a condition which only a few shippers can comply with and, consequently, is an injustice to those unable to ship the required quantity.'' *Planters' Compress Co. v. Cleveland, C. C. & St. L. R. Co.*, 1 I. C. C. 382 [402, 403]; *Providence Coal Co. v. Providence & W. R. Co.*, 11 I. C. C. 107; *Anaconda Copper Mining Co. v. Chicago & E. R. Co.*, 19 I. C. C. 592; *Burlington C. R. & N. R. Co. v. Northwestern Fuel Co.*, 31 Fed. 652; Watkins, Shippers and Carriers (3d ed.), § 159.

We do not mean to hold that under no circumstances should the commission, in fixing rates, or the transportation company in fixing schedules, consider and be influenced by things done by the shipper which would reduce the cost of transportation. Beyond question, such conditions will arise. But they should be of such importance as to at once distinguish such shippers from others. They should be individual acts of material consequence, and not numerous acts each of small significance. Any other rule would seem to make the public service act cumbersome and unworkable. We realize that the statute invests the commission (now department) with broad powers and that the courts should be slow to interfere with its decisions, but we are also forced to the conclusion that the logic of the decision which we are reviewing would lead to such complications as would ultimately destroy the virtues of the public service act.

But the appellant contends that, inasmuch as the commission found that the average logging rate of other railroads for transportation of logs for similar distances is $1.85 per thousand feet, board measure, it was authorized to fix the same rate here. But we are not convinced by this argument. It is certainly entirely proper for the commission to make comparisons under proper circumstances between a charge made by one carrier and that made by another, but in mak-

ing such comparisons all of the circumstances should be taken into consideration, such as the distance of the haul, the amount of competition, the amount of money invested in the particular road bed and equipment operated thereon, and other like things. In this instance the commission does not seem to have gone to this length, but only found that other railroads carried logs for a like distance as that involved here for $1.85 per thousand feet. But even should it be considered that the commission, in making the comparison, had taken into consideration all the things which we have enumerated, yet we are satisfied that it would not have been justified, on that ground alone, in fixing the rate as it did, for in another of its findings it expressly found "that the rates and tariff charges fixed by the respondent and other railroad companies within the state of Washington for the transportation of logs have been arbitrarily fixed and determined by said railroad companies, in many instances, without any reference to the cost of service rendered, and out of proportion to the charges exacted by other shippers for similar services for like distances, and the log rates of this state, as a whole, are inequitably constructed, and in many cases are neither fair nor just," and that the commission (department) is now in the process of making an examination into the whole log rate question, with the view of establishing fair and equitable rates concerning that tariff. If such be the general condition with reference to log rates, then certainly it would not be fair nor just for the commission to fix rates in this particular instance by comparison with such unjustifiable rates as other carriers impose.

Other questions are presented which we do not find it necessary to discuss.

The judgment of the trial court merely reversed and set aside the order of the commission. It seems to us

that the whole matter ought to be referred back to the commission to reconsider the testimony in the spirit consistent with what we have said in this opinion, and if it is thought best, take additional testimony.

The cause is remanded to the superior court, with directions to add to the judgment already made by it the idea that the whole matter is again referred to the commission, in order that it may act in consonance with this opinion. The respondent will recover costs here.

PARKER, C. J., MITCHELL, and TOLMAN, JJ., concur.

## ON REHEARING.

### [*En Banc.* June 20, 1922.]

PER CURIAM.—This cause was reargued before the court *En Banc* on May 31, 1922. Deeming ourselves fully advised in the premises, the court adheres to the views and conclusions announced in the decision of Department One, and for the reasons therein expressed, the cause is remanded to. the superior court with directions as therein contained.