STATE EX REL. RAILROAD AND WAREHOUSE COMMISSION v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

September 24, 1926.

No. 25,664.

**Suit to restrain carriers from adopting discriminatory interstate and intrastate rates dismissed.**

After the Interstate Commerce Commission established maximum reasonable interstate freight rates, effective in districts which include a portion of the state of Minnesota, the carriers advanced their rates to the maximum allowed by the commission. These rates are higher than the intrastate rates established by the Railroad and Warehouse Commission. The disparity in the rates has produced unjust discriminations against certain cities in Minnesota. The Railroad and Warehouse Commission brought suit to compel the carriers to remove such discriminations and to observe the statutory requirements as respects intrastate rates. *Held* that the varying rates in effect in different portions of the state were legally established under either Federal or state authority and, since the discriminations complained of can be avoided only by the modification of one or both of the legally established rates and rate making is a legislative and not a judicial function, the trial court correctly ruled that the suit could not be maintained.

Commerce, 12 C. J. p. 17 n. 93; p. 125 n. 64, 69.

[1]Reported in 210 N. W. 399.

The Railroad and Warehouse Commission petitioned the district court for Ramsey county for an injunction restraining defendant from maintaining discriminatory freight rates. The matter was heard by Michael, J., who dismissed the proceeding on the merits. Petitioner appealed from the judgment. Affirmed.

W. E. Hustleby and Ivan Bowen, for appellant.

B. W. Scandrett and M. L. Countryman, Jr., for respondent.

LEES, C.

The Railroad and Warehouse Commission presented a petition to the district court of Ramsey county representing that since September 11, 1925, respondent has unlawfully charged unequal and discriminatory rates for the transportation of freight from point to point within the state of Minnesota, and asked that a writ of injunction be issued to compel respondent to desist from continuing so to discriminate.

Respondent answered as follows: In May, 1922, the Commercial Club of Fargo, North Dakota, filed a complaint with the Interstate Commerce Commission, alleging that the freight rates charged in Minnesota by respondent and other carriers unjustly discriminated against the interstate commerce of Fargo. After public hearings, the commission found this to be true as to existing class rates from certain cities in Minnesota to points in the state within 150 miles of Fargo. An order was entered directing that the discrimination be removed by making effective a scale of rates set out in the order and found to be reasonable rates as applied to the traffic in question. Similar action was taken on the application of shippers from Watertown, South Dakota, the scale of rates authorized being somewhat lower than those specified in the Fargo order. Pursuant to the orders, respondent and the other carriers operating in the Fargo and Watertown districts duly filed, published and posted the tariffs complained of. In November, 1925, the Railroad and Warehouse Commission cited respondent and the other carriers to show cause why they should not restore the intrastate rates which prevailed

prior to September 11, 1925, in the territory affected by the orders of the Interstate Commerce Commission. Respondent's answer to the order to show cause was that it had changed its rates to comply with the order of the Interstate Commerce Commission and that the existing inequalities in intrastate rates could not be removed without permission of the Railroad and Warehouse Commission and respondent asked that it be allowed to advance its rates to the same level throughout the state. On December 23, 1925, the Railroad and Warehouse Commission ordered respondent and other carriers to desist from charging the rates established in the Fargo and Watertown districts. Thereupon respondent applied to the United States District Court of the district of Minnesota for an injunction to restrain the enforcement of the order. The application was granted and an injunction issued. Respondent then renewed its application to the Railroad and Warehouse Commission for permission to remove the inequalities in the intrastate class rates in the manner heretofore mentioned. The application was denied and was followed by this suit, which was commenced by the Railroad and Warehouse Commission to enjoin respondent from continuing to charge discriminatory rates in disregard of the provisions of the state statute.

After a trial at which the facts pleaded by respondent were established to the satisfaction of the court and adopted in the findings, it was ordered that the suit be dismissed. The court found that "the respondent's varying intrastate freight rates and tariffs now in force in different parts of this state * * * do cause many substantial inequalities between different shippers of the same class of commodities in intrastate shipments, but this is due wholly to the fact that in a portion of the state the rates and tariffs charged and received by the respondent are those legally fixed and established by and pursuant to orders of the Interstate Commerce Commission while in the balance of the state the rates and tariffs charged and received by the respondent are those duly fixed and approved by the relator, Railroad and Warehouse Commission of Minnesota, the last named rates being lower than those first named."

Judgment of dismissal on the merits was entered and the commission appealed.

By L. 1913, p. 76, c. 90, commonly known as the "Cashman Act," the legislature prohibited carriers by rail from charging or receiving any greater compensation for the transportation within the state of a like class of freight for a shorter than for a longer distance over the same line of railway.

The rates authorized by the Railroad and Warehouse Commission after the law went into effect, and the purpose and effect of the law, were considered in Washed Sand & G. Co. v. G. N. Ry. Co. 130 Minn. 272, 153 N. W. 610, and in State v. C. & N. W. Ry. Co. 133 Minn. 413, 158 N. W. 627, and need not be restated. The distance feature of the law is substantially the same as that of the Interstate Commerce Act. See paragraph 1, § 4, of the act, and Skinner & Eddy Corp. v. U. S. 249 U. S. 557, 39 Sup. Ct. 375, 63 L. ed. 772. One purpose of both acts is to make distance of movement an important, if not controlling, factor in fixing transportation charges.

As a result of the Fargo and Watertown orders, the charges for transportation of freight from certain jobbing and manufacturing cities in eastern Minnesota to points in the western portions of the state are higher than those charged for the transportation of freight for a longer distance over the same railway line for shipments originating in other cities in eastern Minnesota. In other words, since the rates authorized by the Interstate Commerce Commission were put into effect, the carriers have disregarded the requirements of G. S. 1923, §§ 4766, 4804, 4837 and 4838.

In establishing the Fargo rates, the Interstate Commerce Commission found that the scale of class rates from Fargo to points in Minnesota within a radius of 150 miles should be the same as those charged by the carriers for shipments from certain cities in Minnesota named in the order when the point of destination was within the area of trade tributary to Fargo. It was also found that the Minnesota class rates on intrastate shipments were less than reasonable maximum rates. Similar findings were made in the Watertown case, which affected certain cities in southeastern Minnesota.

No attempt is made to justify a continuance of the situation created by these orders. They have resulted in rates which give certain localities advantages over other localities in intrastate shipments of most commodities.

The manner in which these discriminations may be corrected is discussed in the briefs, but that is a matter for administrative or legislative action and is outside the province of the courts. The only question we can determine is whether the district court erred in denying the application for an injunction.

The authority of the Interstate Commerce Commission to make the Fargo and Watertown orders and the validity of the orders is not and cannot be disputed. As long as they stand, the carriers may charge the rates thereby authorized. Neither a court nor the Railroad and Warehouse Commission has jurisdiction to interfere. This is so because the authority of Congress over interstate commerce, as exercised through the Interstate Commerce Commission, is paramount to the authority of the state. The fact that intrastate as well as interstate rates are affected by the Fargo and Watertown orders, does not impair the force and effect of the orders. The Supreme Court of the United States has held that, under the commerce clause of the Constitution, Congress has power to prevent railroads from being used in their intrastate operations in such manner as to affect injuriously traffic which is interstate; that, when unjust discrimination against interstate commerce arises out of the relation of intrastate to interstate rates, the power may be exercised to remove the discrimination, whether the intrastate rates are maintained under a local statute or by the voluntary act of the carriers; that, in correcting the discrimination, Congress is not restricted to an adjustment or reduction of interstate rates, but may prescribe a reasonable standard to which they shall conform and require the carrier to adjust the intrastate rates in such manner as to remove the discrimination; that the power of Congress may be executed through the Interstate Commerce Commission, and, where the commission finds a disparity in interstate and intrastate rates which results in unjust discrimination against interstate commerce, the

commission may determine what are reasonable rates for the interstate traffic and direct the removal of the discrimination, whereupon the carriers may put in force the interstate rates found reasonable and remove the forbidden discrimination by bringing the intrastate rates to the same level. Houston E. & W. Tex. Ry. Co. v. U. S. 234 U. S. 342, 34 Sup. Ct. 833, 58 L. ed. 1341; Am. Exp. Co. v. South Dakota, 244 U. S. 617, 37 Sup. Ct. 656, 61 L. ed. 1352; Illinois Cent. R. Co. v. State Public Utilities Comm. 245 U. S. 493, 38 Sup. Ct. 170, 62 L. ed. 425; Wis. Rd. Comm. v. C. B. & Q. R. Co. 257 U. S. 563, 42 Sup. Ct. 232, 66 L. ed. 371, 22 A. L. R. 1086.

We find nothing in Sullivan v. Minneapolis & R. R. Ry. Co. 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612, cited by counsel for the Railroad and Warehouse Commission, out of harmony with the Federal cases above cited. If there is any conflict, the Federal cases control and must be followed by this court.

But it is argued that the Interstate Commerce Commission cannot authorize common carriers to charge unequal intrastate freight rates; that the subject of intrastate rates and the correction of inequalities and discriminations therein lies wholly within the jurisdiction of the state government, and that no order of the Interstate Commerce Commission can relieve a common carrier from its obligation to observe the laws of the state prohibiting preferences in the rates accorded to individuals or localities for the intrastate transportation of commodities.

Congress has declared that the Interstate Commerce Act shall not apply to transportation of property wholly within one state. See par. 2, § 1, of the act and note the language of the court in Simpson v. Shepard, 230 U. S. 352, 420, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. But in par. 4, § 13, of the act Congress authorized the commission to prescribe maximum or minimum, or maximum and minimum, rates whenever it was found that the prevailing rates caused undue prejudice as between localities in intrastate commerce on the one hand and interstate commerce on the other, or any undue discrimination against interstate commerce, and declared that the rates so prescribed should

prevail unaffected by the law of any state or the decision or order of any state authority to the contrary notwithstanding. The scope and effect of § 13, read in conjunction with the Transportation Act of 1920, 41 U. S. St. 488, was considered in Wis. Rd. Comm. v. C. B. & Q. R. Co. 257 U. S. 563, 42 Sup. Ct. 232, 66 L. ed. 371, 22 A. L. R. 1086. In the course of the opinion it was said that the Interstate Commerce Commission did not have unified control of interstate and intrastate commerce; that it was only unified to the extent of maintaining efficient regulation of interstate commerce under the paramount power of Congress, and that it did not involve general regulation of intrastate commerce.

The Fargo and Watertown orders were based on the conclusion of the Interstate Commerce Commission that interstate commerce in the districts mentioned in the orders was injuriously affected; that the Minnesota rates were too low; that the relation of intrastate to interstate rates produced unjust discriminations against interstate commerce; that the disparity in rates should be removed in order to do away with the discrimination and, to accomplish this result, the carriers were authorized to charge the maximum rates specified in the orders. The rates established affected intrastate as well as interstate traffic, and the discriminations and inequalities of which the Railroad and Warehouse Commission complains are due to acts of the carriers which the Interstate Commerce Commission has authorized.

We see no escape from the conclusion that the courts of this state cannot compel the respondent to cease to charge rates authorized by the Interstate Commerce Commission, although, as a consequence, the whole structure of intrastate class rates is disturbed and glaring inequalities are created. Respondent cannot obey the state law without incurring the penalties of the Federal law, and the state cannot compel obedience to its law and consequent disregard of Federal authority. "Manifestly one authority must be paramount, and when it speaks the other must be silent." Southern Ry. Co. v. Reid, 222 U. S. 424, 442, 32 Sup. Ct. 140, 144 (56 L. ed. 257).

It is argued that, as long as the Cashman Act is in effect, it is the duty of the carriers to obey it. In a sense that is true, but the Fargo and Watertown orders had the effect of rendering the act inoperative in certain portions of the state, for the orders were made in the exercise of the paramount authority of the Federal government over all matters affecting interstate commerce.

The object of proceedings to remove unjust discriminations is to readjust the relationship of rates. In the Fargo and Watertown cases the Interstate Commerce Commission was called upon to relieve the Dakota cities from prejudicial discriminations resulting from the freight rates charged by the carriers. To remove the prejudice the commission fixed the maximum scale of rates which might be charged. It is argued that the relationship in the scale of rates for which the commission provided can be preserved if the carriers charge less than the maximum rates authorized. If this be true, it is within the power of the commission to modify its orders and reduce the rates now charged by virtue thereof. It is too well settled to admit of argument that state courts have no authority to make or unmake rates authorized by the Interstate Commerce Commission.

The trial court ruled correctly. To have ruled otherwise would have been an invasion of the domain in which the authority of Congress is supreme. The Interstate Commerce Commission need not observe the requirements of the Cashman Act. The Railroad and Warehouse Commission must do so as long as the act is in effect. It would seem that legislation providing for such contingencies as this is necessary in order to relieve the Railroad and Warehouse Commission from the restraint imposed by the Cashman Act.

Judgment affirmed.