(Nos. 18866, 18867, 18868.—

THE COMMERCE COMMISSION *ex rel.* The Brown Shoe Company *et al.* Appellees, *vs.* THE ILLINOIS TRACTION, INC., Appellant.—THE COMMERCE COMMISSION *ex rel.* The M. J. Buscher Ice and Coal Company, Appellee, *vs.* THE WABASH RAILWAY COMPANY, Appellant.—THE COMMERCE COMMISSION *ex rel.* the M. J. Buscher Ice and Coal Company, Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed June 19, 1929.*

JAMES J. GRAHAM, L. H. STRASSER, and L. P. DAY, (GRAHAM & GRAHAM, JAMES A. KNOWLTON, and D. P CONNELL, of counsel,) for appellants.

GEORGE P. O'BRIEN, for appellees.

Mr. COMMISSIONER CROW reported this opinion:

The proceedings out of which these appeals arise were brought before the Illinois Commerce Commission on a joint complaint of the Brown Shoe Company and the Litchfield Creamery Company against the Illinois Traction, Inc., and on two complaints of the Buscher Ice and Coal Company against the Wabash Railway Company and the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, (referred to hereafter as the Big Four,) for the reduction of freight rates on coal. The complaints were made the subject of investigation by the commission on a single record, with a stipulation that evidence by parties to any of the complaints might be considered in any of the cases to which it was applicable, on the consolidated record. In the Wabash and Big Four cases the commission made a single order covering both complaints but made a separate order in the Illinois Traction case. By the terms of the commission's orders the carriers were required to publish and put

in effect, on or before March 11, 1927, reductions in their individual rates per ton for the haulage of bituminous coal from Illinois points to Litchfield, Illinois, as follows:

| From | Distance | Change in Rate from | Railroad |
|------|----------|---------------------|----------|
| Gillespie | 23 miles | 91c to 60c | Illinois Traction |
| Mt. Olive | 9 " | 88c to 55c | Wabash |
| Mt. Olive | | On screenings 70c to 55c | Wabash |
| Hillsboro | 13 " | 91c to 55c | Big Four |
| Gillespie | 10 " | 91c to 55c | Big Four |

On appeal by respondents to the circuit court of Macoupin county the orders of the commission were approved, and these further appeals are prosecuted.

The evidence in support of the ninety-one cent rate is, that it is substantially in harmony with other group rates on roads in this State. The history of the rate between the points now in question is: The first rate, effective October 1, 1915, was thirty cents from Gillespie and Hillsboro to Litchfield. A slight change was made on April 24, 1917. The rates were increased fifteen cents a ton on October 16, 1917, and on June 25, 1918, they were increased fifteen cents, and under the disposition of the fractions the rate became sixty cents from both points on October 5, 1918. The re-adjustment was made under freight rate authority No. 220 of the United States Railroad Administration, and the rate became sixty cents and sixty-nine cents from Gillespie and Hillsboro, respectively. On December 10, 1919, the rate became seventy-two and five-tenths cents and was fixed by the United States Railroad Administration. The seventy-two and five-tenths cent rate was a group rate applying from mines on the various railroads serving Litchfield, such as the Illinois Central, the Chicago, Burlington and Quincy, the Wabash and the Big Four. On February 19, 1921, the rates were increased forty per cent, and on July 1, 1922, reduced ten per cent, resulting in a rate of ninety-one cents, the present rate.

The present rate of ninety-one cents in effect on the Big Four and the Traction Lines to Litchfield applies as a group rate from various mines in the vicinity of Litchfield. The group includes, in addition to mines at Gillespie and Hillsboro, others located on the Big Four, Illinois Central, the Burlington, the Chicago and Eastern Illinois, and lines similarly situated. The rate of the other carriers will not be affected by the commission's orders in these cases, and those lines will continue to apply the ninety-one cent rate for a service similar to that for which the orders in question limit appellants' compensation to fifty-five cents in one case and sixty cents in the other.

The burden of proof was on the petitioners to show that the rates of which they complain are unreasonable. (*Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 320 Ill. 214; *Public Utilities Com.* v. *Atchison, Topeka and Santa Fe Railway Co.* 278 id. 58.) The legislature has provided for review of the decisions of the Commerce Commission upon all matters committed to it in the regulation of rates by common carriers. There should be ascribed to its decisions the strength due to the judgment of a tribunal appointed by law and informed by experience. Where the facts are controverted and the decision depends upon credit to be given contradictory testimony the courts will give great weight to the finding of the commission, which is qualified by experience and special study to weigh the facts and circumstances applicable to cases within its jurisdiction. It is the duty of the courts to weigh and consider the evidence, and if it is found that the order of the commission is without substantial foundation in the evidence it should be set aside, (*Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165,) although there may be some evidence in the record which, if uncontradicted, would support the order. *Choate* v. *Commerce Com.* 309 Ill. 248.

The evidence in support of the orders consists of the testimony of the owners, operators and employees of the plants of the petitioners as to the operation of the plants, their location, the quantities of coal consumed and the source of their coal supply. None of them testified to any fact tending to prove that the rates complained of are excessive. The only testimony in the record tending to prove the alleged unreasonableness of the rates was that of J. H. Kane, the attorney who filed the petition on behalf of the petitioners. The evidence as to the reasonableness of the rates consists of the testimony of officers of the respondents and of qualified experts in traffic rates. One testifying as an expert must show that he is qualified by knowledge and experience to testify to the matters concerning which his testimony is given. There is nothing in the evidence showing that by experience or otherwise Kane is qualified to testify to those matters. The record shows that comparative rates between points in Indiana, Michigan and Missouri were testified to by the witness by reference to decisions of the Interstate Commerce Commission or other commissions, but the relevancy of those references does not appear. Comparative rates between other points in Illinois are not relevant unless the conditions are shown to be substantially the same as in the case at bar. There is no such evidence in the record.

The evidence is totally insufficient to sustain the order made by the Commerce Commission. A careful consideration of the testimony as abstracted shows that the witness Kane dealt in generalities and irrelevant comparison of rates between points in this State and other States. The commission's order included many of them. It is based on the alleged facts that the present rate from Gillespie to Litchfield is 203 per cent higher than the rate in effect in 1913; that the present rate from Hillsboro to Litchfield is 185 per cent higher than the rate in 1913; that the present lump coal rate from Mt. Olive to Litchfield is 252 per cent

higher; and that the fine-coal rate between those points is 180 per cent higher. The order is based partly on a comparison with short-haul coal rates for distances of fifty miles and less in the State of Indiana, and it is said those rates have been before the Interstate Commerce Commission for review on several occasions and that the commission in each case declined to interfere with the rates. Quoting from decisions of that commission, it is said to have held that "the territory comprised in the two States, Illinois and Indiana, is essentially similar in character, and that the Indiana-Illinois line does not divide diverse transportation conditions." Evidently the Interstate Commerce Commission was speaking of conditions affecting interstate rates. The order is further based on rates published by the Big Four between points in Saline county, Illinois. Those rates are fifty cents per ton for a distance of ten miles to twenty-five cents per ton for a distance of four and two-tenths miles, but nothing in the record shows similarity of conditions with those now considered. The conclusion of the order, as deductions from the findings, is: "The general level of freight rates in the State of Illinois to-day is 65.375 per cent higher than that obtaining in 1913. That is to say, that freight rates generally, other than the rates for the transportation of coal, have been increased that percentage. These increases as they were authorized were permitted for the purpose of granting to the carriers the revenue necessary to pay all operating expenses, including taxes and depreciation, and to provide a reasonable return on the investment in property devoted to the public use. Applying this percentage (65.375%) to the rates in effect from Gillespie, Hillsboro and Mt. Olive to Litchfield, the result will be: Gillespie to Litchfield fifty cents, Hillsboro to Litchfield fifty-three cents, and Mt. Olive to Litchfield forty-two cents."

The established rates by the commission as a deduction from the premises stated is a *non sequitur*. If the "gen-

eral level of freight rates" now as compared with 1913 is to be made the basis for a decrease of rates, it ought to be established by facts that those rates are too high in view of present conditions and that the new rate is reasonable and conforms to changed conditions. There is no such evidence in the record. If there were evidence in the record that freight rates generally, other than the rates for the transportation of coal, have increased the percentage of the general level of rates, no foundation is laid for the decrease in coal rates. But there is no such evidence.

The case at bar is not different, in principle, from *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 320 Ill. 214, referred to as the *Danville Brick case.* What was said in that case is peculiarly applicable to the facts in this: "The real basis for the order seems to be in the finding that the rate would now be twenty-nine cents instead of fifty-eight cents if the same percentages of increase and decrease which were required to be made in freight rates generally had been made applicable to short-haul coal rates and applied to the rate of sixteen cents in force in 1917. This is not, however, a proper foundation for an order now fixing a rate. Whatever errors may have been made in the past by the rate-making power may be remedied by a new order fixing the proper rate, but it must be done by an order based upon a consideration of what now constitutes a reasonable rate without regard to previous errors." In *Alton and Southern Railroad* v. *Commerce Com.* 316 Ill. 625, an attempt was made to establish the unreasonableness of a rate by comparison with other rates for transportation of coal in the States of Illinois, Indiana and Minnesota. Holding the evidence insufficient and an improper basis for the new rate, it was said: "In these comparisons, however, they did not show that the circumstances and conditions in these other short hauls that they used for comparison were similar to

the hauls from their mines to the East St. Louis switching district. These rate comparisons not being based on evidence showing similarity of conditions could have no probative value and were therefore incompetent."

The order of the commission is without substantial foundation in the evidence.

The judgment of the circuit court is reversed and the cause remanded, with directions to set aside the order and remand the cause to the Commerce Commission for further proceedings.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*