# RAILROAD AND WAREHOUSE COMMISSION v. CHICAGO & NORTHWESTERN RAILWAY COMPANY AND OTHERS.

98 N. W. (2d) 60.

July 17, 1959—No. 37,676.

*Gene F. Bennett, Curtis H. Berg, Charles H. Clay, L. C. Corcoran, Frank S. Farrell, Don McDevitt, W. T. Patterson, Q. C., L. E. Pierce, Franklin B. Stevens,* and *Edgar Vanneman, Jr.,* for appellants.

*Miles Lord,* Attorney General, and *Robert J. Stenzel,* Special Assistant Attorney General, for respondent.

KNUTSON, JUSTICE.

This is an appeal from the judgment of the District Court of Ramsey County affirming an order of the Railroad and Warehouse Commission prescribing a scale of maximum reasonable rates for single and joint line application of shipments of sand, gravel, crushed rock and related commodities, and agricultural limestone by railroad in Minnesota intrastate commerce.

This proceeding was initiated by the Railroad and Warehouse Commission of the State of Minnesota in order to investigate the rates on sand, gravel, crushed rock, crushed stone, agricultural limestone, and related articles charged by the railroads in this state. After a hearing at which oral testimony was taken, the commission issued its order prescribing a maximum scale of rates for single and joint line application on sand, gravel, crushed rock and related commodities, and agricultural limestone.

The railroads then appealed to the District Court of Ramsey County, and a transcript of the testimony before the commission and certain exhibits which were introduced before the commission were submitted to the district court. In addition, certain additional exhibits were submitted. The district court ordered that the order of the commission be affirmed. The railroads then moved that the district court make findings of fact and conclusions of law, which the court refused to do for the reason that it was the court's opinion that in such an appeal, pursuant to M. S. A. 216.25, findings of fact and conclusions of law were not required.

The railroads have now appealed to this court from the judgment of the district court. The issues asserted on this appeal are: (1) That the district court erred in not making findings of fact and conclusions of law; (2) that the commission erred in denying the railroads the right to file a written brief; (3) that the commission did not find that

the present rates on the commodities involved were unreasonable or discriminatory and the findings made by the commission do not warrant any inference to that effect; (4) that the findings of fact of the commission are not supported by the evidence; (5) that the commission failed to take into consideration the factors required to be considered by M. S. A. 1953, § 216.54, in arriving at the joint rates; and (6) that the evidence will not support a finding that the present rates on the commodities here involved are unreasonable or discriminatory.

■ The railroads contend that the district court erred in not making findings of fact and conclusions of law and that, as a result, the railroads were denied the review of the order of the commission to which they were entitled.

The order of the district court was brief, and its last sentence reads:

"It is hereby ordered that the orders of the Railroad and Warehouse Commission referred to above, from which this appeal is taken, are hereby in all things affirmed."

The railroads thereafter requested the court to make findings of fact and conclusions of law. This motion was denied, and the district court, in its memorandum accompanying the order denying the motion, said:

"The Statute, Section 216.25, on appeals from the Railroad and Warehouse Commission, does not require the Court to file findings of fact and conclusions of law, but only to make an order affirming or vacating the order appealed from. * * *

\* \* \* \* \*

"This Court has determined that the orders were lawful and reasonable. Hence, the order."

Section 216.25, as far as pertinent to the contentions of the railroads, reads:

"* * * and thereupon [after an appeal from the commission] the district court shall have jurisdiction over the appeal and the same shall be entered upon the records of the district court and shall be tried therein according to the rules relating to the trial of civil actions

so far as the same are applicable. * * * No further pleadings than those filed before the commission shall be necessary [in the district court]. Such findings of fact shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. *If the court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable, it shall be vacated and set aside.*" (Italics supplied.)

This statutory provision has received considerable attention by this court regarding the scope of review,[1] but we have not heretofore been confronted with the precise question now presented with the one exception of rate cases involving confiscation. We have held that findings of fact and conclusions of law in such cases must be made by the district court as well as the commission.[2]

In view of the fact that the railroads have not raised the question of confiscation, either at the commission or district court level, our inquiry is confined to cases involving the reasonableness of the established rates or, more precisely in this case, the unreasonableness of rates existing before the change. The statute in such cases only requires the district court to determine whether the order of the commission is lawful and reasonable, and, once that is determined, the district court need only affirm if that be the case. There is no mention in the statute of any necessity for findings by the trial court; hence, in view of what we said in Chicago & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 582, 268 N. W. 2, 4, 709—

"* * * Where the statute *specifically* calls for findings of fact, the

---

[1]State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398, appeal denied, 352 U. S. 804, 77 S. Ct. 46, 1 L. ed. (2d) 38; State v. Chicago & N. W. Ry. Co. 246 Minn. 403, 75 N. W. (2d) 411, and cases cited therein.

[2]Western Buse Tel. Co. v. Northwestern Bell Tel. Co. 188 Minn. 524, 248 N. W. 220; Lenihan v. Tri-State T. & T. Co. 208 Minn. 172, 293 N. W. 601.

decision, whether of the commission or the district court, cannot stand unless such findings are made" (italics supplied),

there appears to be no absolute requirement that such findings be made. From a reading of the numerous cases concerning this statute and its predecessor statutes, it appears that the district courts in the past quite frequently have made their own findings, which in view of this holding are not necessary but are most helpful to this court in a review of such a matter as is now before us. It is desirable that they continue to do so.

The railroads rely to some extent on that portion of § 216.25 which reads:

"* * * and shall be tried therein [the district court] according to the rules relating to the trial of civil actions so far as the same are applicable."

The railroads assert that Rule 52.01 of Rules of Civil Procedure becomes applicable by virtue of the above language. Rule 52.01 provides in part as follows:

"In all actions *tried* upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *." (Italics supplied.)

The inapplicability of this rule to the proceedings in the district court is obvious. In the first place, this proceeding was not an action "tried upon the facts," but it was a proceeding in which the district court's only functions are to determine (1) whether the commission's findings of fact were reasonably supported by the evidence, and (2) whether in the light of such facts the order was reasonable and lawful.[3] A review of a matter of this kind is not an action tried upon the facts without a jury in that the function of the district court is appellate in reviewing the findings of a commission.[4] It follows that the action of the trial court in affirming the order of the com-

---

[3] State v. Chicago & N. W. Ry. Co. 246 Minn. 403, 75 N. W. (2d) 411.

[4] State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398, appeal denied, 352 U. S. 804, 77 S. Ct. 46, 1 L. ed. (2d) 38.

mission without findings of fact and conclusions of law was not reversible error.

■ The railroads next contend that they were denied a hearing pursuant to M. S. A. 1953, § 216.21, and Rule XIV(1) of the Railroad and Warehouse Commission Rules of Practice in that, although they requested an opportunity to submit a written brief, they were denied that right at the close of the testimony before the commission.

The denial of the request of the railroads took place at the close of the testimony before the commission when the following exchanges took place:

"Mr. Clay: I'd also like to ask for permission to file a brief on this matter.

"Mr. Radke: Well, Mr. Chairman, if they are going to ask for a brief on this small matter, then I'm going to make a similar request next week in connection with the 206 case which is much more involved.

"Commr. Rasmussen: There is no question of law involved in this. The Commission doesn't think that it's necessary for the information that they need in order to render a decision in this matter, so we will not require any briefs.

"If there isn't anything further, the Commission will take the facts, testimony—

"Mr. Clay: I'd just like to state one thing further, Mr. Commissioner, that in these proceedings, of course, we occasionally get into arguments, but we try as best we can to refrain from argument during the course of the hearing, with the theory being that if we feel argument is necessary, that we can do so in written brief which saves everybody's time.

"Commr. Rasmussen: Do you feel there is any question of law involved in this, or is it purely a matter of fact?

"Mr. Clay: It's a question of argument as to what the facts mean, and we do have some questions of law we'd like to present.

"Commr. Rasmussen: What questions of law are involved?

"Mr. Clay: Well, for instance, Mr. Radke's last exhibit shows the commodity rates in Iowa, the special rates. I don't feel that there's been

sufficient evidence to show that they are of any probative value, and I'd like to argue and point out why.

"Mr. Radke: Mr. Chairman, the previous witness gave the high distance scale.

"Mr. Hart: Well, I think it should be noted that the reason I gave it was—

"Commr. Rasmussen: The Commission has ruled no brief will be necessary. If there isn't anything further, we will take the facts, testimony, and evidence under consideration and, according to our judgment, render an equitable decision affecting all parties concerned."

This proceeding was initiated by the commission on its motion pursuant to M. S. A. 1953, § 216.21, which provides in part:

"* * * Before making any order under the provisions of this section, the carrier shall have an *opportunity to be heard,* upon such notice as the commission shall deem reasonable." (Italics supplied.)

Pursuant to M. S. A. 216.11, which grants the commission authority to adopt its own rules, the commission has adopted its own Rules of Practice, among which is Rule XIV. Rule XIV, entitled Briefs and Oral Argument, provides in part:

"Briefs must comply with the following requirements: Each brief must contain the date thereof and an abstract of the evidence relied upon by the party filing it assembled in an orderly manner with reference to the pages of the record or exhibit where the evidence appears, and should indicate the desire of the party filing it as to action by the commission.

"1. Time for service and filing of brief. At the close of testimony in each case the commission, the presiding commissioner, or designated employee, will fix the time for filing or service of the respective briefs, as follows, unless good reason for variation therefrom is shown: * * *. All such time will run from the date of filing of the transcript of which counsel will be notified by the commission.

"2. All briefs or written arguments before presentation to the commission must be filed with the secretary accompanied by written evidence of service upon opposing counsel, party or parties.

"3. Oral argument. The commission may order oral argument in

its discretion, but if oral argument is desired by any of the parties to the proceeding, the Commission should be notified before or at the hearing. Such argument will be transcribed and bound with a transcript of the testimony and will be available to the commission for consideration in deciding the matter."

From the expressions of Commissioner Rasmussen it would appear that he viewed the right to file a brief as being discretionary with the commission. There is no doubt that the right to oral argument clearly is discretionary in view of the wording of Rule XIV(3). However, the railroads contend that a reading of the rule in its entirety leads to the conclusion that the parties are entitled to file a written brief as a matter of right.

In Londoner v. Denver, 210 U. S. 373, 386, 28 S. Ct. 708, 714, 52 L. ed. 1103, 1112, the court said:

"* * * a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal."

In Morgan v. United States, 298 U. S. 468, 481, 56 S. Ct. 906, 912, 80 L. ed. 1288, 1295, the court said that "Argument may be oral or written." However, any rule regarding the necessity of argument was not clarified by the Supreme Court in Federal Communications Comm. v. WJR, 337 U. S. 265, 276, 69 S. Ct. 1097, 1103, 93 L. ed. 1353, 1360, wherein the court said:

"* * * the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations."

Despite this latter case, it would appear that in order to satisfy procedural due-process requirements there must be, in addition to the opportunity for presentation of evidence, the right to argument, either oral or written.

Our own decisions do not indicate that the precise question of argument has arisen. The farthest we have gone in determining the requirements of due process was in Juster Bros. Inc. v. Christgau, 214 Minn. 108, 119, 7 N. W. (2d) 501, 507, where we said:

"* * * The requirement of due process means opportunity for a hearing, *i. e.,* opportunity to be present during the taking of testimony or evidence, to know the nature and contents of all evidence adduced in the matter, and *to present any relevant contentions* and evidence the party may have. In other words, that the party have his 'day in court.' " (Italics supplied.)

In State v. Tri-State T. & T. Co. 204 Minn. 516, 521, 284 N. W. 294, 300, we said:

"* * * Due process demands that rates be fixed only after a hearing attended by at least the rudiments of fair play. The commission is in consequence required to base its decision upon the evidence *and arguments* disclosed at the hearing; its order must be supported by findings of fact which are in turn sustained by the evidence." (Italics supplied.)

The right to present the contentions of the parties and to point out the inferences and conclusions which they believe should be drawn from the evidence, by argument, either oral or written, is as much a part of due process as the right to present evidence itself. The record does not show that the railroads requested the right to argue the case orally. Inasmuch as there must be a reversal, we now hold that it would be error to deny the railroads the right to argue the case, either orally or by written briefs. Certainly in a case such as this, involving complicated evidence, much of which is in the form of comparison of mathematical computations as to rates in this and other states, the right to file written briefs ought to be freely granted. In the event that right is to be denied, the parties are entitled to present their views in the form of oral argument.

■ The next contention of the railroads is that the commission has not made essential findings that the present rates on the commodities involved herein are unreasonable or discriminatory.

M. S. A. 1953, § 216.21, provides in part:

"The commission shall on its own motion investigate any matter relating to the management by any carrier or warehouseman of its business, or the reasonableness of any or all rates, schedule of rates, fares, charges, rules, regulations, or classifications when in its judgment

the public interest requires it. *If any such rates, schedule of rates, fares, charges, rules, classification, or regulations are found unreasonable or discriminatory, the commission shall find what is reasonable under the circumstances and may make an entire new schedule and adjustment of any or all rates,* schedule of rates, fares, charges, rules, regulations, and classifications under consideration in such investigation and its order shall fix the date when such rates, schedule of rates, fares, charges, rules, regulations, and classifications shall go into effect." (Italics supplied.)

The commission contends that a finding of unreasonableness of existing rates is implicit in a finding that the rates now established are reasonable.

The right of the commission to change existing rates under § 216.21 rests on a finding that existing rates are unreasonable or discriminatory. In State v. Tri-State T. & T. Co. 204 Minn. 516, 522, 284 N. W. 294, 300, we said:

"Recitals in the order of submission to the statutory rules of procedure and decision are inconclusive; compliance with the legislative standard must be evident from the findings of the commission. Interstate Commerce Comm. v. N. P. Ry. Co. 216 U. S. 538, 30 S. Ct. 417, 54 L. ed. 608; Morgan v. United States, 298 U. S. 468, 56 S. Ct. 906, 80 L. ed. 1288. Likewise, in the case of due process the single finding that existing rates are unreasonable is a conclusion and insufficient unless supported by findings of fact more particularly stated which demonstrate the grounds upon which the conclusion is based so that the court may determine whether the order proceeds from a conscientious consideration of the evidence or is arbitrary. Western Buse Tel. Co. v. N. W. Bell Tel. Co. 188 Minn. 524, 248 N. W. 220; United States v. C. M. St. P. & P. R. Co. 294 U. S. 499, 55 S. Ct. 462, 79 L. ed. 1023; Ohio Bell Tel. Co. v. Public Utilities Comm. 301 U. S. 292, 57 S. Ct. 724, 81 L. ed. 1093."

Under the statute, the commission was required to find not only that the existing rates were unreasonable or discriminatory but the facts upon which that conclusion was based. The mere fact that this is a proceeding involving comparatively few commodities does not ob-

viate the necessity of complying with the statute and applicable decision law. The essential finding of unreasonableness or discrimination is not necessarily implicit in a finding that a new rate would also be reasonable. Findings of fact upon which an order is based are not only helpful to the parties involved but are essential to a review by the district court, particularly in view of the limitations of such review. They also serve a purpose in requiring the commission to consider the evidence in the light of the required findings rather than to simply draw a conclusion unsupported by evidence as to the essential findings. Here the findings clearly are insufficient to meet the minimum requirements of our statute.

■ The final and decisive issue presented on this appeal relates to the sufficiency of the evidence to sustain a finding that existing rates were unreasonable or discriminatory, which is essential to a proceeding under the statute involved here.

The rates existing prior to the commencement of these proceedings were originally prescribed by the commission some 40 years ago. From time to time these rates have been increased by ex parte orders to meet rising costs of the railroads, such as increased wages, material, and other items going into costs of operation.

The basic rates on sand, gravel, crushed rock, and agricultural limestone were on a parity for many years. At the time of this hearing the rates on sand and gravel were approximately 6 percent higher than the rates on crushed rock and agricultural limestone because of the fact that the commission had granted certain increases in the rates on sand and gravel and had not granted these increases on crushed stone and agricultural limestone. Complaints reached the commission that this difference in rates operated to the disadvantage of the dealers in the products carrying the higher rate. Some of the complaining dealers testified at the hearing that they would be satisfied if the rates were made uniform by raising the lower rates rather than lowering the higher rates.

It is interesting to note that in a proceeding before the Interstate Commerce Commission (referred to hereinafter as ICC) pursuant to § 13 of the Interstate Commerce Act (49 USCA, § 13) the ICC found that the Minnesota intrastate rates on sand, gravel, crushed rock,

and certain other commodities were abnormally low and caused undue, unreasonable, and unjust discrimination against interstate commerce because of the failure of the Minnesota commission to grant increases similar to those granted by the ICC on interstate traffic. The decision of the ICC in that case stated that an order would be issued by it unless it was notified by the Minnesota commission within 30 days from the date of service that it would permit certain increases to go into effect. In a subsequent proceeding decided on April 23, 1957, the ICC again found that Minnesota intrastate rates on crushed rock and agricultural limestone, along with certain other commodities, were abnormally low and caused undue, unreasonable, and unjust discrimination against interstate commerce because of the failure of the Minnesota commission to grant increases similar to those granted by the ICC on interstate traffic. The Minnesota commission again was given 30 days within which to permit the increases required in order to remove the discrimination which the ICC found to exist. On May 20, 1957, the Minnesota commission issued its order permitting the increases sought, to become effective on July 1, 1957.

The effect of the present reduction in rates would be to wipe out most of the increases obtained by virtue of these orders of the ICC. If the ICC had made an order instead of a recommendation, our commission would have been unable to accomplish what they have done here.[5]

It is argued by the commission that a large percentage of the shipments of the commodities involved travel on specially reduced rates which are granted with the approval of the commission in order to meet competition of trucks and other factors, such as the distance from the point of production to the point of delivery. We do not think that the fact that a large percentage of the commodities travel on such rates affects the reasonableness of the rates as to the balance of the

---

[5]See, State ex rel. R. & W. Comm. v. N. P. Ry. Co. 168 Minn. 393, 210 N. W. 399; *ICC Extension of the Shreveport Doctrine,* 60 Yale L. J. 356; *Interstate Commerce Commission Control of Intrastate Rates,* 44 Yale L. J. 133; *The Dual Regulation of Commerce Under the Amended Thirteenth Section of the Act to Regulate Commerce,* 19 Ky. L. J. 312; *The Authority of the Interstate Commerce Commission Over Intrastate Rates,* 17 Georgetown L. J. 39.

traffic. The reasonableness of the rates now established, as it affects the traffic carried on these rates, must be determined quite apart from the traffic carried on specially reduced rates.

The rates now established by the commission are based on a schedule of proposed rates prepared and submitted at the commencement of the hearing by Otto A. Radke, who is in charge of the rate and statistical divisions of the Minnesota Railroad and Warehouse Commission. The evidence introduced to support the adoption of these proposed rates consists entirely of a comparison of the rates proposed here with rates on similar commodities in the states of Wisconsin, Iowa, South Dakota, and Nebraska. It is claimed by the commission that the rates charged for the shipment of the commodities involved are substantially lower in the adjoining states and in Nebraska. The evidence shows that the rates in North Dakota are substantially higher, but apparently the commission was unwilling to consider those rates because they consisted in the main of shipments to and for governmental projects. Finding No. 16 of the commission's order provides:

"That there are no transportation conditions in Minnesota to justify higher rates in Minnesota than in the States of Iowa, Nebraska, South Dakota, or Wisconsin."

There is no evidence of any kind to support that finding. Mr. Radke, upon whom the commission relied, freely admitted that he had no knowledge of the conditions of transportation which give rise to the establishment of rates in the states compared with those here. In addition to that, the rates used for comparison in the foreign states were based on a single line haul, whereas the rates now established for traffic in Minnesota include joint line movement over not to exceed three lines as well as traffic moving over single lines. All the witnesses, including Mr. Radke, admitted that rates on joint line haul are and should be higher than on a single line. It follows that what the commission is doing here is to use the lowest scale rates in other states for single line shipment as a comparison with the maximum rates established for Minnesota for traffic on joint line hauls up to three carriers. When comparisons are made of the rates in these foreign states on joint line hauls for the same distance, they are almost invariably higher than the existing rates in Minnesota for a similar type of haul.

It would be useless to discuss in detail in this opinion the comparative figures. While we fully understand that ratemaking is a specialized field that ordinarily should be left to the commission, we are convinced that in this case the yardstick used to measure reasonableness or unreasonableness of existing rates was wholly inadequate to justify a finding that was essential to the action taken by the commission. The mere comparison of existing rates with those of adjoining or nearby states, without any showing of the similarity of conditions, is of little or no probative value.[6] Such comparisons, at least between the same carrier operating in both states, may have some probative value if it is shown that the comparative operating cost is the same and that the same yardstick is used in the comparison, but to compare single line rates in one state with joint line rates in another, without any showing of similarity in operating conditions, can hardly sustain a finding of unreasonableness of the rates here or reasonableness of the rates established, based on such comparisons.[7]

It follows that the trial court was in error in upholding the order of the commission and that the order of the commission is not sustained by the evidence.

Reversed.

---

[6]Bater v. Atchison, T. & S. F. Ry. Co. 279 I. C. C. 461, 464; Milner Export & Trading Co. Inc. v. Chicago, B. & Q. R. Co. 283 I. C. C. 415, 418; Associated Traders, Inc. v. Union Pac. R. Co. 279 I. C. C. 118, 119; Reconstruction Finance Corp. v. Akron, C. & Y. Ry. Co. 287 I. C. C. 353, 375; Moline Consumers Co. v. Illinois Commerce Comm. ex rel. Chicago, B. & Q. R. Co. 353 Ill. 119, 126, 187 N. E. 161, 164; Chicago & Eastern Ill. Ry. Co. v. Commerce Comm. ex rel. Cairo Assn. of Commerce, 343 Ill. 117, 175 N. E. 8; Chicago & Eastern Ill. Ry. Co. v. Commerce Comm. ex rel. Hoopeston Grain & Coal Co. 341 Ill. 277, 173 N. E. 380; Commerce Comm. ex rel. Brown Shoe Co. v. Illinois Traction, Inc. 335 Ill. 247, 251, 167 N. E. 38, 39; Alton & Southern R. v. Commerce Comm. ex rel. Perry Coal Co. 316 Ill. 625, 628 to 629, 147 N. E. 417, 419; Antioch Milling Co. v. Public Service Co. 4 Ill. (2d) 200, 123 N. E. (2d) 302.

[7]State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 39 N. W. (2d) 752; see, also, G. N. Ry. Co. v. Dept. of Public Works, 161 Wash. 29, 296 P. 142; Public Service Comm. v. State ex rel. G. N. Ry. Co. 118 Wash. 629, 204 P. 791, 207 P. 688, 25 A. L. R. 186.