STATE ex rel. RAILROAD AND WAREHOUSE COMMISSION v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

July 24, 1903.

Nos. 13,417—(133).

**Mandamus—Reopening of Railway Station.**

In an action for mandamus, upon the petition of the Railroad and Warehouse Commission to re-establish a station which had been removed by defendant from a point on its line of road, which removal greatly

[1] Reported in 96 N. W. 81.

diminishes the facilities for public use, and is not in compliance with the usual statutory requirements for the maintenance of a railway station, *held*:

1. That the superior convenience of a railroad company in the operation of its line of road is not the sole consideration in the establishment or change of station facilities.

2. That the rights of the public, which have become affected, by the use of a railway station, to such an extent that substantial interference therewith would be a disadvantage to the patrons of the company, is an important question, which should not be disregarded.

3. That the question solely of expense in the operation of a station, or the diminution of profits secured therefrom, will not justify the removal or change of a station, if public rights are affected.

4. Facts in this case considered, and *held* to justify an order of the Railroad and Warehouse Commission requiring the defendant to re-establish a railway station at Bluffton, a village having a population of one hundred inhabitants, a general store, with other industries incident to a farming community, which has for more than fifteen years depended upon the station for railway facilities and located highways with reference thereto.

Alternative writ of mandamus issued from the district court for Otter Tail county commanding defendant to erect and maintain a station house at Bluffton on the line of defendant's railway and to maintain an agent in charge thereof, as required by an order of the railroad and warehouse commission. The case was tried before Baxter and Searle, JJ., who made findings of fact and as conclusion of law found that relator was entitled to a peremptory writ. From a judgment entered pursuant to the findings, defendant appealed. Affirmed.

*C. W. Bunn* and *Emerson Hadley,* for appellant.

*W. B. Douglas,* Attorney General, and *W. J. Donahower,* Assistant Attorney General, for respondent.

LOVELY, J.

Mandamus, upon the petition of the State Railroad and Warehouse Commission, to compel the establishment of Bluffton Station, on defendant's road. The order to locate the station was not complied with, and is now sought to be enforced in these proceedings. Upon the issue joined by defendant's answer the cause was tried to the district court, who made findings of fact upon which the relief demanded was

granted.    Judgment was entered, from which the railway company appeals.

The material facts determinative of this appeal can hardly be said to be involved in dispute.    In 1885 the defendant had located a station at Bluffton, which became and remained a village of considerable importance until 1896, there being at the place a good water power, mills, and general stores, many of which have not been operated since the latter date.    Since then its business has materially declined; but defendant continued to maintain its station until April 14, 1901, when it moved the depot building to a point on its road three miles west where it newly located, and now maintains, a station (with an agent) which was named Dopelius.    In lieu of the building so removed, defendant erected on the site of the former station a much smaller wooden structure 12x16 feet in dimensions, placed therein a settee and stove, but has not maintained an agent there, nor stopped local trains except one day in the week, save when flagged to take on passengers or to discharge those who are desirous of getting off.    A local freight train stops there on flag two days each week.

Whether the traffic at Bluffton Station previous to 1895 was lucrative and profitable the record does not disclose, but since 1895, until the station was discontinued, defendant's business did not in the aggregate more than pay half the expense of maintaining the station, and the population had been reduced to seventeen families, numbering about one hundred persons.    There were, however, at the time of the order of the commission, a general store, creamery, and other small industries incident to the necessities of the surrounding farming community, although a new general store and other buildings were being constructed.    At the time when the business of the station was most profitable to defendant, the principal industry was cutting timber and manufacturing lumber, but, owing to the changes in the settlement of the surrounding country, this business had very substantially declined. In place of the lumbering industries, however, many persons have settled and opened farms in the immediate vicinity, whose interests depend upon the station facilities furnished, and have been provided for by the laying out of roads and highways on the north and south of the station, which converge at that point and have become tributary to the same.

The newly established station of Dopelius has only one store, operated by defendant's agent, which was moved by him from Bluffton at the time of the change, and it does not appear that any new highways have been laid out or run to that point to accommodate the adjacent country, nor does it appear that the farming community, if there is any in its vicinity, would be benefited by the new location. In this respect we are bound, in deference to the conclusions reached by the commission and the trial court, to adopt the view that a very considerable tract of farming country, inhabited and utilized for agricultural purposes by over one hundred families, is mainly dependent for railroad connections upon the continuance of the former station, and that the change adopted by the defendant would require entirely new arrangements of highways to reach practically a railway station for their accommodation, which would compel the former patrons of Bluffton, who had occupied their farms, built residences thereon, and laid out roads in reliance upon the previous facilities furnished by defendant, to travel a much greater distance than before to obtain them. It also reasonably appears from the evidence that the diminution in the business of Bluffton has ceased, and it has been regaining business importance to a considerable extent.

It is not apparent from the record that the defendant solicited leave from the commission to make the change it adopted, and we are required to assume that it did not do so. But its reasons for the change rest entirely upon convenience in operating its railway. The former station of Bluffton was located near the foot of a one per cent. grade descending for the distance of half a mile to the west and to a slighter extent from the east, it being claimed that it is more advantageous in the management of its trains to have a station and operator at a point where all trains can be stopped without difficulty from stalling, which would be much better secured at Dopelius than at Bluffton; but it does not appear that the local trains which were formerly stopped at Bluffton on regular schedule time are now retarded or prevented from doing so by this difficulty. The heavy through trains had not previously stopped at Bluffton, and would not be required to do so by the continuance of the station there; neither is it, nor could it well be, within the purview of the order to require the defendant to abandon facilities for the stoppage of trains at Dopelius, or for the passage of other trains,

and the giving of telegraphic orders at that point, if it should be for its advantage to adopt that course. Hence the practical question involved is whether the convenience of the railway itself can be made the primary and decisive condition upon which the abandonment of the Bluffton station must depend, and to what extent the interests of the public tributary to the road should affect its action in that respect.

It would seem to be now well settled, upon principles of public policy, that the decisive question in such a case should not be the convenience or benefit of railway companies alone. They undoubtedly have a right to consider their own profit and convenience largely, but also owe duties to the public, for which reasons they have been permitted to establish their roads, and enjoy many substantial privileges depending upon benefits which will accrue to patrons adjacent to their lines, and incidental to the obligations thus imposed must be the duty to treat the public fairly, and furnish them with reasonable facilities to enjoy the benefits they confer; hence the discontinuance of an established railway station which their patrons have been permitted to use for years, upon the faith of whose location the people of a village and the surrounding country have depended, cannot be determined solely by the consideration whether a railway station is profitable to the road, nor upon its convenience and the adaptation of its affairs to the increased advantages and methods of transacting its business, nor by the test whether the continuance of a station will require it to incur increased expense. This wholesome conclusion is supported by authority, and is founded upon equity and reasonable grounds of general utility. Railroad v. Portland, 63 Me. 269; People v. Louisville, 120 Ill. 48, 10 N. E. 657; People v. Chicago, 130 Ill. 175, 22 N. E. 857; Mobile v. People, 132 Ill. 559, 24 N. E. 643; State v. Sioux City, 7 Neb. 357; Gladson v. Minnesota, 166 U. S. 427, 17 Sup. Ct. 627.

It is insisted that the decision in State v. Minneapolis & St. L. R. Co., 76 Minn. 469, 79 N. W. 510, requires a reversal of the judgment in this case, but we do not so understand the result therein reached. In that case this court set aside the order establishing a station at Emmons, principally upon the ground that at a point one mile distant on the line of the same railroad there was another fully equipped station furnishing facilities to the inhabitants of Emmons, who might avail themselves of the same, and it was regarded as a needless imposition upon the

railway company to require two new stations to be established so near to each other. Again, this is a case of an established station which the action of the railroad company itself had determined to be a necessity, while in the Emmons case a new station was to be located; but here defendant led the public to act upon their faith in the continuance of the station, and to some extent it would seem as if, when defendant by its own action has determined that a station needed for the convenience of the public should be located, and has been maintained for a considerable time, it ought not, after long continuance and use, to deprive those benefited thereby of the same, or supply its place by such diminished facilities as fail to comply with statutory requirements for established stations.

Judgment affirmed.