## J. T. SCHAIN AND OTHERS v. GREAT NORTHERN RAILWAY COMPANY.[1]

### June 8, 1917.

### Nos. 20,317—(18).

**Railway — change in trains — order of commission.**
> The court was warranted in finding that the order of the Railroad and Warehouse Commission, directing appellant to make certain changes

[1] Reported in 162 N. W. 1079.

in its passenger and freight service upon the Browns Valley branch of its railroad system is not unreasonable or unlawful.

In the matter of freight and passenger train service on the Browns Valley branch of the Great Northern Railway Company, and from St. Paul and Minneapolis to stations on that line, the railroad and warehouse commission ordered respondent railway company to put into operation the trains, freight and passenger, that are found reasonable in the order. From that order the railway company appealed to the district court for Traverse county where the matter was heard before Parsons, J., acting in place of the judge for the Sixteenth judicial district, who made findings and affirmed the order of the commission. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Lyndon A. Smith,* Attorney General, *Henry C. Flannery,* Assistant Attorney General, and *D. J. Leary,* for respondents.

HOLT, J.

The appeal is from an order denying defendant's motion for a new trial in a proceeding instituted and determined before the railroad and warehouse commission and reviewed by the district court, resulting in an affirmance of the order of the commission. For more than 30 years appellant has owned and operated a 47-mile stub line, or branch railroad, from Morris on its main line to Browns Valley. Previous to the action of the commission appellant gave only a tri-weekly freight service, the train leaving Morris about 7 in the morning and returning about 5 in the afternoon. This train carried an accommodation passenger coach, but it did not make convenient connection with the main line train to the twin cities. Appellant also ran a daily passenger train, except Sundays, leaving Brown Valley about 9 in the forenoon and returning shortly after 6 in the afternoon. This train made fair connections with the local passenger train to and from the twin cities. The commission's order directed appellant to operate a freight train daily, except Sundays, to leave Browns Valley not earlier than 6 a. m. to reach Morris not later than 11 a. m., making connection with the east bound main line train, and return to Browns Valley at 10 p. m.

also to run a week-day passenger train to leave Browns Valley at 8 p. m. to arrive at Morris at 10 p. m., and so as to leave Morris at 7 a. m., arriving at Browns Valley at 9 a. m.

Appellant contends that the commission disregarded the interests of both the public and the carrier in the order, which is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment. The legislature of this state, in common with those of the majority of states, recognizing the necessity of some reasonable supervision and control of railroads and their business, created the railroad and warehouse commission with power to hear and determine complaints of inefficient service by a railroad company. The business of such a company is complex and affects its patrons variously. One community on a railroad line may deem it quite essential that passenger trains arrive or depart at a particular hour. The same in a measure with freight service. The people of some other locality on the line may conclude that the same trains must make their station at such an hour or at such times that it would be utterly impossible to conform to the wishes of the first mentioned community. Even the desires of the residents and business men at or adjacent to any one station of a railroad cannot be harmonized in respect to train schedules. It is readily appreciated that the task of the railway officials to arrange train schedules so as to give adequate service at the right time to its patrons, the public, is extremely difficult. No matter what is done some persons will be inconvenienced. The same holds true when complaint is made to the commission, and it passes upon what the railroad should do in the premises. Because of the existence of so many divergent desires and needs among the patrons of a railroad in respect to trains and train schedules, it is not easy to produce satisfactory proof either before the commission or the court, if there be an appeal, on a question involving the frequency and character of train service. Each party to the controversy, by carefully selecting witnesses in respect to locality and occupation, may make a plausible showing. Those business men residing at or near the station on this branch where another railroad affords convenient trains to and from the twin cities, of course, see no particular need of the change ordered. Nor do the hotel-keepers at other

stations on the branch, whose business is promoted by compelling travelers to stop over with them.

Reading the record with an eye open to these, and other considerations of a like nature, we arrive at the conclusion reached by the learned trial court, namely, the unreasonableness of the order of the commission has not been made to appear. The law is well settled. The court must let the orders of the commission stand, unless they are shown to overstep the bounds placed upon the exercise of its power. It function is administrative and the court, in reviewing its order on appeal, cannot try the matter anew and substitute its judgment in place of the commission. The court is not to inquire whether the order is the best solution of the problem presented, but whether it is unreasonable or in violation of some constitutional or legal right of the railroad. The burden is upon the railroad, in case of appeal, to show that the order is not reasonable. We merely refer to two late cases where the subject is treated. State v. Great Northern Ry. Co. 123 Minn. 463, 144 N. W. 155; State v. Great Northern Ry. Co. 130 Minn. 57, 153 N. W. 247.

One of the chief reasons actuating the commission was to better the freight service by providing that the tri-weekly freight train with accommodation passenger coach attached should run daily, except Sundays. This means also more efficient mail service, as we understand it. No testimony was produced from shippers or merchants that the tri-weekly freight service was adequate or satisfactory, but all went to the effect that a freight with passenger accommodation coach attached was needed every week day. The other main reason for the ordered change was to give the business men along the branch the opportunity of transacting business at Minneapolis and St. Paul more expeditiously, by providing a passenger train to connect with the night train on the main line to and from those cities, so that the trip would consume two nights and one day instead of three days and two nights. To achieve these main objects necessitated some, perhaps undesirable, changes in the schedules in respect to the arrival and departure of the trains from Browns Valley, so that the train which is to connect with the local daily passengers from the twin cities will arrive at Browns Valley

at 10 p. m., or later if not on time, and the one which is to carry those who desire to take the local day train to the twin cities will leave Browns Valley as early as 6 o'clock in the morning. Both these trains being accommodation trains, of course, are slow, consuming more than twice the time of the passenger train. That this is a disadvantage to the persons on this branch line who desire to proceed to some point on the main line, is obvious. It is also undeniable that the change ordered places some additional expense upon appellant. However, this is not so great that the action of the commission should be reversed on that score. Nor do we understand the appellant to contend that the expense and inconvenience to it and its servants are so burdensome that the order cannot well be complied with. The commission, evidently, is not certain that the change will work out satisfactorily, and is disposed to treat justly both appellants and the public, for the order states: "If after a fair trial the service herein ordered proves to be impracticable, the commission will hear either side as to its improvement." The trial of the plan involves no great expense to appellant; no additional equipment worth mentioning is required.

Order is affirmed.