A. S. ABRAHAMSON AND OTHERS v. CANADIAN NORTHERN RAILWAY COMPANY.[1]

April 12, 1929.

No. 26,944.

[1]Reported in 225 N. W. 94.

*Hector Baxter, W. E. Rowe,* and *E. H. Morphy,* for appellant.
*Steenerson & Neils,* for respondents.

HILTON, J.

Appeal by defendant from an order denying its motion for judgment or for a new trial.

Plaintiffs are residents or live in the vicinity of Pitt railway station in Lake of the Woods county, Minnesota, and are affected by the order of the railroad and warehouse commission hereinafter referred to. The defendant is a common carrier for hire of freight and passengers by means of railroad transportation, operating principally in the Dominion of Canada and incorporated under its laws. It operates 31 miles of railroad in Roseau and Lake of the Woods counties in this state and serves seven stations therein, including Pitt. This railroad in Minnesota is owned by the Minnesota & Manitoba Railroad Company, a Minnesota corporation, and is operated by defendant under a 99-year lease. The defendant and the Duluth, Winnipeg & Pacific Railway Company, with other railways, are amalgamated into what is called the Canadian National Railways. Each is a separate corporation. The Canadian National Railways entered an appearance at the hearing before the railroad and warehouse commission. The Duluth, Winnipeg & Pacific Railway Company (173 miles) is located wholly in Minnesota and is operated by the Canadian National Railways.

Defendant on March 16, 1927, filed with the railroad and warehouse commission a petition requesting authority to close its station at Pitt in so far as affording agency service was concerned; on

May 3, 1927, a hearing was had thereon at which parol and docu mentary evidence was received. The commission made and filed its order on August 16, 1927, granting the petition for the discontin uance of such service, conditioned upon the installation of custodian service. An appeal was taken to the district court from the order.

The trial court found that the business from outgoing and incoming traffic at Pitt station for the year 1926 exceeded the sum of $8,000; that the business from outgoing and incoming traffic thereat exceeded the sum of $1,500 for the first three months of 1927 and exceeded that sum for three consecutive months immediately preceding the filing of defendant's petition with the commission. It was also found that because of the volume of the annual business from outgoing and incoming traffic at said station and the number of persons residing at said townsite and in that vicinity requiring agency service at such station, the inconvenience and financial loss that would be suffered by such persons on account of the dispensing with such service, the order of the commission was unreasonable. The court allowed $100 as attorneys' fees for the counsel for plaintiffs and also taxable disbursements.

On motion of defendant for additional and amended findings the court made further findings: (a) That the total gross business from outgoing and incoming traffic, both local and interline, at said station for the year 1925 from freight, passenger, express and money order and telegraph, constituting all the traffic of said station (including an estimate as to receipts for incoming passenger traffic) amounted to $8,459; (b) that the total amount of such business for the year 1926, computed in the same manner, amounted to $9,852.04; (c) that for the months of January, February and March, 1927, the gross business from the same sources and computed in the same manner, amounted to $2,587; (d) that the share of the traffic specified above apportioned to and received by the defendant, after deducting the share of interline foreign carriers and after deducting the share of the Duluth, Winnipeg & Pacific Railway, for the year 1925, as noted in (a) above, was $3,543.43; for 1926, $4,516.84; for January, February and March, 1927, $1,144.48; that the share of

the Duluth, Winnipeg & Pacific Railway in the interline traffic in and out of Pitt for the year 1925 was $1,250; for 1926, $890; for the first three months of 1927, $287; and also found that the annual expense of the company of furnishing agency service at said station, above the expense of stationery, fuel and upkeep of station, was the sum of $135 per month as agent's salary. The commission found that agency service would cost $1,200 per year more than custodian service. The evidence showed that 95 per cent of the freight business in and out of Pitt was American business. In its conclusions of law, the court held that appellants were entitled to judgment vacating the order of the railroad and warehouse commission and requiring defendant to keep an agent at such station.

■ G. S. 1923 (1 Mason, 1927) § 4651, relative to appeals from an order of the railroad and warehouse.commission, among other things provides that its findings of fact shall be prima facie evidence of the matters therein contained and that the order made thereon shall be prima facie reasonable and that the burden of proof upon all issues raised by the appeal shall be upon the appellant. It provides further:

"If said court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable it shall be vacated and set aside."

On the appeal the district court had before it and considered all the evidence given at the hearing before the commission and also new evidence presented at the trial. That evidence showed sufficiently the necessity for agency service. A district court, in reviewing the findings of the commission, is governed by the same rules as those of an appellate court in reviewing the findings of a jury in a trial in the court below. Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713. An order of the commission may be vacated by the trial court if it is based on some mistake of law or if there is no evidence to support it or if, having regard to the interests of both the public and the carrier, it is so arbitrary as to be beyond the

exercise of a reasonable discretion and judgment. State v. G. N. Ry. Co. 135 Minn. 19, 159 N. W. 1089.

The original enactment relative to stations was:

"And where the annual business *of any railroad company* at any such station amounts to fifteen thousand dollars ($15,000) or more, based upon the outgoing and incoming freight and passenger traffic, then such railway company shall keep an agent at said depot during the business hours of each business day during the entire year * * *." [L. 1897, p. 115, c. 94.]

In 1901 the figures $15,000 were changed to $8,000. G. S. 1923 (1 Mason, 1927) § 4887, now reads:

"When the annual business from outgoing and incoming traffic *at any station* amounts to eight thousand dollars or more, such company shall keep an agent at such station during the business hours of each business day." [Italics ours.]

The order of the commission shows that the earnings at Pitt station from all sources, including through charges, were: $7,646.72 for 1925 and $8,180.97 for 1926. These figures did not include estimates as to incoming passenger traffic. Including such estimates ($665 for 1925 and $845 for 1926), the court found the total gross business at Pitt station was $8,459 for 1925 and $9,852.04 for 1926. The findings of the court as to the first three months of 1927 were $2,587.

In its order the commission says:

"Whether the words 'annual business' as used in the said section of the law mean the actual earnings of the operating company only, or its earnings and the earnings of its connecting carrier or carriers is much involved in the instant case. The courts have never passed upon the question."

Then follows:

"From a full and complete consideration of the evidence presented, * * * the Commission finds that under section 4887, * * * the revenues at Pitt, Minn. station do not fulfill the requirements

for agency service, and that full custodian service will adequately care for the patrons of the railway company for the present at least."

Then follows the order for such custodian service.

The commission was in doubt as to the proper construction but manifestly concluded that the words "annual business" mean the actual earnings of the operating company only. If this is a wrong meaning given to the law, then its order was unlawful, due to mistake of law, and the district court was right in reversing it. State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201. Was the construction placed upon the statute by the commission the correct one? We think not. The change of the language from the original enactment by the elimination of the words "of any railroad company" is significant. The language now appearing is plain and unambiguous. State v. Hovorka, 100 Minn. 249, 110 N. W. 870, 8 L.R.A.(N.S.) 1272, 10 Ann. Cas. 398; Town of Iona v. County of Todd, 135 Minn. 183, 160 N. W. 669; Simmons v. N. P. R. Co. 147 Minn. 313, 180 N. W. 114; Citizens of Hines v. M. & I. Ry. Co. 151 Minn. 402, 186 N. W. 797. The station facilities, reasonable and necessary in the conduct of a certain amount of business, are the same irrespective of what carrier ultimately receives the revenue. The same service is required at Pitt station on a carload of pulpwood whether it is being shipped a distance of six miles to Baudette, or 200 miles, with a corresponding difference in freight charges, or whether the operating company retains all or only part of the freight charges. The same is true as to passenger service. The public interest, safety and convenience must have consideration. In appellant's brief it is stated:

"With the inexorable and unvarying requirement that compensation to the carrier must be considered in determining the question whether an imposed duty is reasonable or not, it must follow that what it earns and receives less its outlay, * * * is its compensation in any case."

The words "annual business" in the statute do not mean annual profit. Had the legislature thus meant, plain language could and

would have been used. Agency service is for the convenience and use of the patrons of the railroad and not exclusively a matter of profit of the carrier. State ex rel. R. & W. Comm. v. N. P. Ry. Co. 90 Minn. 277, 96 N. W. 81. Of course the requirements, all things considered, must be kept within reasonable limits. Such is the situation here. There is nothing in the record showing that the additional cost of agency service would make the requirement unreasonable or unlawful. Here we do not have a matter of rates to be charged but the furnishing of a necessary facility. We consider the question of public necessity and the reasonableness of the court's order. A railroad company is required to furnish necessary and proper facilities in the way of stations, and each station need not necessarily be a profit maker. C. R. I. & P. Ry. Co. v. Nebraska State Ry. Comm. 85 Neb. 818, 124 N. W. 477, 26 L.R.A. (N.S.) 444; State ex rel. R. & W. Comm. v. N. P. Ry. Co. 90 Minn. 277, 96 N. W. 81. The legislature had a right to and did consider that an annual business of $8,000 was a proper quantum upon which to base the necessity of agency service. A reasonable uniformity as to agency service is secured by the conclusions reached by us. This condition would not exist with a holding otherwise.

■ Defendant invokes the protection of the fourteenth amendment to the federal constitution. We have carefully considered the question and hold that the Minnesota statute, as we have construed it, does not violate the constitutional guaranty. The cases cited in defendant's brief and presented in oral argument do not call for a different conclusion.

■ G. S. 1923 (1 Mason, 1927) § 4657, provides:

"In any proceeding in district or supreme court under the provisions of this chapter, or under any law relating to common carriers or public warehousemen, whether by appeal or otherwise, the court may order the payment of such counsel fees and disbursements as it deems just and reasonable."

The chapter and laws referred to relate to railroads and common carriers. The proceeding here involved was before the district court on appeal. It is clearly within the language of the law. There is

no ambiguity. To ascertain its meaning and intent, no reference need be made to previous legislative enactments. The award of $100 as counsel fees against defendant and for taxable disbursements was proper. Plaintiffs may have and recover of defendant the further sum of $100 as counsel fees for legal services of their counsel in this court and taxable disbursements.

We have given full consideration to all the assignments of error and the able arguments, both printed and oral, in support thereof. We find that the determination of the trial court as to the facts and the law is correct.

Order affirmed.

WILSON, C. J. (dissenting).

The words "annual business" as used in the statute seem to me to mean the business of the operating company only. The railroad should not be required to incur expense in the administration of a local station wholly out of proportion to what it realizes therefrom. The carrier's income should be the controlling criterion in determining whether the added expense is reasonable. We too often overlook the fact that added expense to a railroad company is simply passed on to the public. I think the legislature intended to impose the expense of "agency service" only when the company's business or income from the traffic at the particular station would warrant it. It prescribed a standard. The construction adopted is unfair, and hence the legislature would not so intend. This construction deprives the stations from which the incoming business originated and the stations at which outgoing business was received of their proper credit. This company is now charged with full benefit of all the traffic whereas perhaps the major portion of the income therefrom goes to other lines. To my mind reason does not support this theory, and I believe the conclusion reached by the court is at war with the intent of the legislature. It puts a burden upon the particular carrier because of somebody else's business.

STONE, J. (dissenting).

I feel that the construction of the statute urged by the Chief Justice is the correct one.