## STATE v. CHARLES M. THOMSON, TRUSTEE, CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

April 25, 1941.

Nos. 32,546, 32,830.

*Warren Newcome, George F. Dames,* and *William T. Faricy,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *George T. Simpson,* Assistant Attorney General, for the State.

STONE, JUSTICE.

Meriden, an unincorporated village of about 100 inhabitants, is a station on the line of the Chicago & North Western railroad between Mankato and Winona. In March, 1939, the railway company, by its trustee, petitioned the railroad and warehouse com-

[1]Reported in 297 N. W. 715.

mission under 1 Mason Minn. St. 1927, § 4887,[2] for leave to close the Meriden station "as a railroad, express and telegraph agency service" and to conduct it "as a prepaid non-agency station with custodian service." After hearing, the petition was denied. On appeal to the district court the order of the commission was affirmed. The appeal is from the judgment.

No statute defines or expressly authorizes "custodian service." But the commission has power to authorize closing the station. Its power to grant a lesser degree of relief must be conceded.

The commission's "findings of fact shall be *prima facie* evidence of the matters therein stated, and the order shall be *prima facie* reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant." The order shall be "affirmed" or "vacated" depending upon the court's determination of whether it is "lawful and reasonable." 1 Mason Minn. St. 1927, § 4651. The order should be vacated "if, having regard to the interest of both the public and the carrier, it is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment." State v. G. N. Ry. Co. 130 Minn. 57, 61, 153 N. W. 247, 248, Ann. Cas. 1917B, 1201. Applying these rules to the plain and controlling facts, we hold that the court was in error in not vacating the order of the commission. State ex rel. Railroad & Warehouse Commrs. v. M. & St. L. R. Co. 76 Minn. 469, 79 N. W. 510; cf. State ex rel. Railroad & Warehouse Comm. v. N. P. Ry. Co. 90 Minn. 277, 96 N. W. 81.

The "custodian service" proposed by appellant at Meriden contemplates maintenance of present station and trackage, with an agent available at all times but actively on duty only when business requires. The principal change will be the discontinuance

2"4887. When the annual business from outgoing and incoming traffic at any station amounts to eight thousand dollars or more, such company [the railroad] shall keep an agent at such station during the business hours of each business day; and no station shall be abandoned, nor the depot removed, nor an agent withdrawn therefrom without the written consent of the commission."

of money transactions. There will result a saving of almost $1,000 of the present $1,198.98 yearly out-of-pocket expense of maintaining this station. For 1938 (the year immediately preceding this petition), gross revenue of the station was $4,793.63: *$3,780.70 from carload freight;* $527.94 from less-than-carload freight; $5.95, miscellaneous freight; $56, passenger fares; $247.03, railway express; $53.94, lease revenue; and $122.07, estimated mail revenue.

Similar figures for previous years show gross revenue of $9,942.57 in 1936 and $6,234.25 in 1937. Carload freight revenue decreased from $8,786.40 in 1936 and $5,065.75 in 1937. The other items have remained fairly constant. Highly important and all but ignored is the fact that 78.8 per cent of 1938 gross revenue (all but $1,012.93) was from carload shipments, and over 90 per cent of this was from two shippers. For such shipments, "you would have practically the same service * * * as you have now." During 1938, approximately 3½ carload and 30 less-than-carload shipments were handled per month. Carload freight would be received and delivered the same as before.

The average number of passengers leaving from and arriving at this station *per month* during 1938 was 12, and average monthly revenue therefrom was $4.65. But one passenger train per day is scheduled to stop. Under the proposed plan the depot would be heated and lighted when necessary for convenience of passengers.

The station income from railway express averaged $20.50 per month during the same year. This service will be continued substantially as before, with exception of money transactions. Express messengers on stopping trains will be authorized to accept and deliver packages. Mail service will not be affected.

The commission found no facts inconsistent with those we have stated. After so finding, it merely concluded that "the annual average and gross earnings" of the station were "sufficient to warrant the maintenance of the present part-time agency service that they have been maintaining in the past years." Neither commission nor court has aided consideration by a finding that, or in what respect, public interest will be prejudiced.

It is the interest of the patrons of this station that is to be guarded rather than that of the general public not immediately affected. The one important result of the proposed change, to be attended by some inconvenience to patrons, will be discontinuance of money transactions at the station. Incoming freight and express will have to be prepaid. Charges on outgoing shipments will be paid at destination. Departing passengers will purchase tickets after boarding trains.

At Meriden the lumberyard and grain company are the two principal patrons of the railroad. A creamery is potentially a large shipper. Because of train schedules and other difficulties not arising from station service as such, the creamery's present and contemplated practice is to ship by truck to Owatonna and thence by rail over another road.

Other local businesses are two groceries, a garage, blacksmith shop, confectionary, poolroom, and oil painting studio. There is testimony and it is common knowledge that retail food stores in such a community receive most of their goods by truck from supply houses in the territory. From their very nature, it is plain that the other businesses will have little use for railroad service.

In case of emergency or necessity, 24-hour agency stations at Waseca, six miles west, and Owatonna, nine miles east, can be reached by highway and telephone. Twenty-four-hour telegraph service is maintained at both these stations.

In sum and on this record, the following propositions are beyond controversy. Except that freight on incoming shipments must be paid at point of origin and that on outgoing carloads at destination, the Meriden carload business will be served as well by custodian as by the present full-time agency service. Placing with the custodian orders for cars to be procured through the agent at Owatonna will but continue present practice.

All but $1,012.93 of the Meriden revenue for 1938 came from carload freight. The substitution of custodian service will save appellant $991.98. To refuse it the privilege of putting in that service will cost it that sum. That is, it will compel the railroad

company to spend *at the Meriden station* alone $991.98 in servicing business, the gross revenue from which is but $1,012.93. That margin of $20.95 would be an almost microscopic return for the larger part of the cost to appellant of the other-than-carload business. All it would have to apply on the expense of the other terminal and the road haul would be that $20.95.

If such an unnecessary imposition is not unreasonable, it is difficult to conceive of one that will be. The petition should have been granted. We find in the record no support for the order denying it.

Judgment reversed.

HOLT, JUSTICE (dissenting).

I dissent. When the railroad built its line from Winona to Mankato it located its station Meriden about midway between the cities of Owatonna and Waseca, 15 miles apart. At that time a station with the usual agency services rendered passengers and shippers in a well settled, fertile farming community was a necessity both for the railroad and the public. Paved highways and motor vehicles may have lessened public necessity for full services at this station. But whether a railroad may close a station like Meriden or permit custodian service is, under our statutes, for the railroad and warehouse commission to determine, and its order in the premises must be considered by the courts as *prima facie* lawful and reasonable. In this case the commission, after a hearing, denied the petition of the railroad to substitute custodian service for the six-hour ordinary station service it was rendering. On the record made before the commission, the court, on appeal, affirmed the order. The findings of fact made by the commission and the court cover the issues in the petition, except the railroad claims that it was entitled to a finding that public necessity and convenience required that custodian service be substituted for the service thus far rendered. From the record the commission could conclude that the rates of the railroad and its reluctance to "spot" cars conveniently for shippers diverted freight from Meriden to

Owatonna or Waseca depots of the railroad or to its competitors. The fact that stations like Meriden do not show a profit is no legal excuse for denying the usual services required of a railroad at such stations. Abrahamson v. Canadian Northern Ry. Co. 177 Minn. 136, 225 N. W. 24. It needs no evidence to show that public necessity and convenience is not served by substituting custodian service for the ordinary agency service thus far furnished by the railroad at Meriden.

GALLAGHER, CHIEF JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Holt.

PETERSON, JUSTICE (dissenting).

I concur in Mr. Justice Holt's dissent.