TWIN CITY MOTOR BUS COMPANY, ST. PAUL CITY RAILWAY COMPANY, v. ANTON RECHTZIGEL, *d. b. a.* SOUTH ST. PAUL TRANSIT. RAILROAD AND WAREHOUSE COMMISSION, INTERVENER.[1]

July 8, 1949.

No. 34,812.

[1]Reported in 38 N. W. (2d) 825.

*Kelly, LeVander & Gillen,* for appellant.

*Dorsey, Colman, Barker, Scott & Barber* and *Doherty, Rumble, Butler & Mitchell,* for respondents.

*J. A. A. Burnquist,* Attorney General, and *George T. Simpson,* Special Counsel, for intervener.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment of the district court vacating and setting aside certain orders of the railroad and warehouse commission granting Anton Rechtzigel, appellant, a certificate of public convenience and necessity to operate a bus line between South St. Paul and West St. Paul via St. Paul and return, and denying respondents' subsequent petition to extend their present service over part of the route authorized for appellant.

Appellant contends that the district court exceeded its jurisdiction on appeal in trying the case *de novo* and substituting its findings for those of the commission; that under M. S. A. 216.25, which governed this appeal, it should have determined only whether the commission's orders appealed from were lawful and reasonable in the light of the evidence presented before the commission; and that any additional evidence received by the court at the hearing on appeal should have been considered only in relation to a determination of this question.

Appellant owns, and for some years has operated, an intra-city bus system entirely within the city of South St. Paul. It is known as the South St. Paul Transit. Respondent St. Paul City Railway Company owns and operates all streetcar lines in the city of St. Paul and a streetcar line on Concord street in South St. Paul connecting the latter with its St. Paul lines. Respondent Twin City Motor Bus Company was granted a certificate of public convenience

and necessity to operate buses from St. Paul to South St. Paul and return prior to 1925. In 1938 it assigned such certificate to the St. Paul City Railway Company. For convenience, the latter, which is now the real party in interest, will hereinafter be referred to as respondent.

On August 7, 1946, appellant filed an application with the railroad and warehouse commission for a certificate of public convenience and necessity to operate a bus route from South St. Paul through St. Paul to West St. Paul and return. At that time, there was no bus service connecting West St. Paul with either St. Paul or South St. Paul, or connecting South St. Paul with West St. Paul.

Respondent made oral objections to the application insofar as it contemplated service between South St. Paul and St. Paul, but made no objection to it insofar as it related to service between West St. Paul and St. Paul. Its objection to the application to serve South St. Paul was based on the ground that (1) service to and from South St. Paul rendered by respondent was adequate; and (2) the granting of authority to appellant to maintain a route through South St. Paul, which was partially parallel to respondent's lines, would divert an excessive amount of traffic from respondent.

At the hearing before the commission, testimony was presented by numerous witnesses that West St. Paul and South St. Paul were portions of one single route, and that a bus line to and from either of them alone would be an unprofitable operation; that appellant's proposed route was to start at the airport in South St. Paul and to serve an area in the northern part of South St. Paul, neither of which areas was served by anyone at that time; that there were only two streets upon which it was practicable to travel from the north part to the south part of South St. Paul, so that for a short distance appellant's proposed route would lie parallel to respondent's lines although some three blocks west thereof; and that appellant did not propose to accept passengers for local transportation within the city of St. Paul. A large number of citizens from South St. Paul in the Butler avenue area not served by any bus line sub-

mitted testimony as to the crowded conditions and inadequate service of respondent's South St. Paul buses.

More than 30 witnesses from South St. Paul and West St. Paul testified in support of appellant's application. Officers of the school board, representatives of churches, the commercial club, and the city council, and private citizens testified as to the urgent need for the bus service in West St. Paul.

This testimony established that West St. Paul is a rapidly growing residential area; that most of its residents work and trade in St. Paul; that it has no high school, and its students are required to attend either Humboldt High School in St. Paul or the South St. Paul High School; that there is no bus transportation to either of such schools; that a grade school located on Jefferson Highway serves residents on the southwest outskirts of the city, and that no bus service is available thereto; and that a number of its citizens work in the packing plants in South St. Paul and have no convenient method of getting there.

Respondent offered no testimony in conflict with the foregoing evidence. Its objections were based upon the claim that no additional service was necessary from South St. Paul. Subsequently, it offered to serve areas proposed to be served by appellant by diverting some of its buses from their regular routes to the unserved areas.

On October 11, 1946, respondent applied for a certificate of public convenience and necessity authorizing the diversion of 17 trips from their regular route to the portions of South St. Paul and the routes which appellant proposed to serve. This application was denied.

On October 18, 1946, the commission entered its findings of fact and order as follows:

"That there are a number of persons residing along the aforesaid Route B [West St. Paul leg] who now have no public means of transportation to schools and other public places along said route,

and from their homes thereon to the City of St. Paul and South St. Paul.

"That certain portions of Route A [the South St. Paul leg] run parallel to existing lines of the St. Paul City Railway Company, but also serve a considerable area in South St. Paul and West St. Paul which is not now served by lines of the St. Paul City Railway Company, and which area requires public means of transportation for the residents thereof in traveling between their homes and the cities of South St. Paul and St. Paul. That petitioner's original application herein, Route A, proposed operations west on Southview to 12th Avenue South, thence north on 12th Avenue South to 4th Street, thence west on 4th Street to 15th Avenue. That on the objection of the St. Paul City Railway Company that it was operating a bus route on 12th Avenue, the petitioner proposed that its route should be changed from 12th Avenue South to 15th Avenue South so as to avoid a duplication of service on the same street. Petitioner's route as set forth in Paragraph 2 has been so amended.

"That neither of said routes [that is, Route A, the South St. Paul leg, and Route B, the West St. Paul leg] alone would afford the applicant a profitable operation, but that by combining the two routes there will be sufficient patronage to maintain the overall operation and enable applicant to furnish transportation to areas which would otherwise be without such service. That the granting of Route A to the applicant will not materially affect the patronage and operating income of the objector, St. Paul City Railway Company.

"That public convenience and necessity requires the granting of the application as to Routes A and B."

The commission further determined that existing service in South St. Paul was not adequate. It subsequently authorized appellant to increase the number of his trips to 16 per day.

The appeal to district court from the orders above described followed.

At the trial in district court, an oral statement was made by respondent's counsel setting forth the grounds for the appeal as follows:

"We are appealing from these three orders because *they are not justified by the evidence* before the Commission; because they are contrary to the statute, and each of them is beyond the powers of the commission *because in making them the Commission disregarded the specific statutory injunctions concerning matters to be considered by it;* because the effect of these orders is to *confiscate* the property of the appellants without due process of law in violation of rights guaranteed by the Constitution of Minnesota and the Fourth Article of the Amendments to the Constitution of the United States because an order of the Commission is unreasonable, unlawful and without statutory warrant; and that applies to each of the orders." (Italics supplied.)

Thereafter, the exhibits before the commission were presented in evidence. Otherwise, new exhibits and testimony were presented which, for the most part, related to facts arising subsequent to the hearing before the commission or to facts not presented therein. Respondent's evidence related principally to establishing that the orders appealed from would result in loss of revenue to its South St. Paul lines and in confiscation of its property. Such evidence will be referred to later herein.

On April 26, 1948, the court made its findings, conclusions, and order setting aside and vacating the commission's orders. Therein it determined that the commission's orders amounted to confiscation of respondent's property; that such orders were made without sufficient evidence; and that they were contrary to the evidence submitted and were unreasonable and unlawful.

We are of the opinion that the trial court erred in substituting its findings and judgment for that of the commission in the light of the evidence which had been presented to the commission. The jurisdiction of the district court on appeal is set forth in § 216.25, which provides in part as follows:

"* * * the district court shall have jurisdiction over the appeal and the same shall be entered upon the records of the district court and shall be tried therein according to the rules relating to the trial of civil actions so far as the same are applicable. * * * *Such findings of fact* [of the railroad and warehouse commission] *shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. If the court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law.* If it shall be determined that the order is *unlawful or unreasonable,* it shall be vacated and set aside." (Italics supplied.)

We have previously set forth the functions of the district court on an appeal governed by the foregoing statute. In State and R. R. & W. H. Comm. v. M. & St. L. R. Co. 209 Minn. 564, 571, 297 N. W. 189, 193, we stated:

"The power to issue certificates of public convenience and necessity is legislative and administrative in character. That function has been delegated by law to the commission. *The district court does not have the power on appeal or otherwise to exercise legislative or administrative power.* On appeal from an order of the commission the court examines the whole matter in controversy to determine *whether the evidence reasonably tends to support the findings of fact upon which the order must be based and to examine the questions of law arising from such facts. In deciding an appeal, the court, for lack of power, does not assume to exercise the functions of the commission and to substitute its own findings for those of the commission.* Nor does it act on its own conception of the wisdom of the order brought before it for review. It decides only the judicial questions whether the order is reasonably supported by the evidence and whether it is lawful and reasonable. It does not try the case *de novo.* * * *

"The lawfulness and reasonableness of the commission's order is to be tested by whether it kept within its jurisdiction, whether in arriving at its decision it was guided by the controlling rule of law (in this case the statute) or acted capriciously and at pleasure, and whether the evidence fairly supports the findings on which its conclusions rest." (Italics supplied.)

■ On appeal from an order of the commission under § 216.25, the district court must examine the evidence before the commission in order to determine whether it reasonably supports the commission's order. Apparently, it may receive additional evidence, but only for the purpose of determining whether, in the light thereof, the commission's order becomes illegal or unreasonable as unsupported by the evidence as of the time of its making. It cannot retry the matter and substitute its own findings for those of the commission. As stated in State v. G. N. Ry. Co. 130 Minn. 57, 60, 153 N. W. 247, 248, Ann. Cas. 1917B, 1201:

"* * * The court, on appeal from the order of the commission, must distinguish, then, between the legislative power to establish regulations and the judicial power to determine upon the reasonableness of regulations already established."

See, also, Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713; State ex rel. R. R. & W. H. Comm. v. G. N. Ry. Co. 123 Minn. 463, 144 N. W. 155; Brogger v. C. St. P. M. & O. Ry. Co. 137 Minn. 338, 163 N. W. 662, 164 N. W. 368; Abrahamson v. C. N. Ry. Co. 177 Minn. 136, 225 N. W. 94; M. & St. P. S. R. Co. v. Villages of Excelsior and Tonka Bay, 186 Minn. 573, 244 N. W. 61.

■ In the instant case, it does not appear that the trial court acted in accordance with the statutory directions. The evidence before the commission clearly established the need for the bus service applied for and amply sustained its order of convenience and necessity. As required by § 221.08, in issuing such order the commission gave reasonable consideration to the interests of the public to the transportation service furnished by the respondent; to the effect its order might have thereon; to the likelihood of the pro-

posed service being permanent and continuous; to the traffic already existing on the route proposed to be traveled; to the effect that the proposed service might have on existing travel; and to the cost of maintaining the highways by reason thereof. These factors having been considered, the conclusion cannot be escaped that the order made by the commission was reasonable and lawful and properly within the functions prescribed for it under the statutes. Accordingly, the district court was without jurisdiction to interfere therewith. See, State and R. R. & W. H. Comm. v. M. & St. L. R. Co. 209 Minn. 564, 572, 297 N. W. 189, 193.

In its findings, the district court determined that the railroad and warehouse commission's order would amount to confiscation of respondent's property. Appellant asserts that this issue was not properly before either the commission or the district court on appeal. He also argues that where the order appealed from relates merely to "convenience and necessity" competition arising therefrom is immaterial in determining the issue of confiscation. There are some authorities indicating that the issue may be properly considered by the district court on appeal from an order of the commission, even though not in issue before the commission. See, State ex rel. R. R. & W. H. Comm. v. M. & St. L. R. Co. 80 Minn. 191, 83 N. W. 60, 89 A. S. R. 514; cf. Western Buse Tel. Co. v. N. W. Bell Tel. Co. 188 Minn. 524, 248 N. W. 220; St. Joseph's Stock Yards Co. v. United States, 298 U. S. 38, 56 S. Ct. 720, 80 L. ed. 1033. We do not deem it necessary to pass on these questions. We feel that the evidence before the trial court in any event was wholly insufficient to sustain its finding of confiscation.

The evidence clearly established that between West St. Paul and St. Paul there was no competition between appellant and respondent. Within the corporate limits of St. Paul, the order did not permit appellant to pick up passengers for local transportation at any place. It is unlikely that he would pick up passengers in South St. Paul bound for transfer points served only by respondent's lines in St. Paul, since appellant could not issue transfers therefor.

The only competition, then, to which respondent was subjected by virtue of the commission's order was for the nontransfer passengers between South St. Paul and St. Paul or vice versa. In two areas of South St. Paul involved therein, to wit, the airport and the Butler avenue district, respondent had no service whatever. In the other portions of the city, the lines of appellant and respondent were parallel for only a short distance. Otherwise, they served entirely different sections of the city.

Testimony was presented that respondent's service during the rush hours was insufficient to accommodate the public demand, and that its buses and streetcars were congested and overcrowded; that it carried more passengers in its South St. Paul operation after appellant started his operation than it did before; and that the revenue therefrom was greater. In 1934 it was operating 22 trips to South St. Paul. In 1941 it had increased the number to 31; in 1945, to 40; and in 1946, to 46. After appellant's operation commenced, six additional trips were added by respondent. The only possible claim it could make as to loss would be that it might have added another 10 or 12 trips if appellant had not commenced his operation.

Exhibits presented indicate that respondent enjoyed an increase in passenger traffic in 1946, and further increases for September, October, and November 1947; and its passenger revenue per bus mile on its South St. Paul route was higher than on any other of its lines except its White Bear local. Its valuation engineer testified that notwithstanding the operation of appellant the passengers on its bus line were increasing. It had made application for a further increase in its fares because of increased operating expenses, but not because of any diversion of its passengers to appellant's lines.

Appellant's evidence indicated that after his buses were in operation his annual gross income would be slightly in excess of $15,000 on the proposed routes. One-half of this would come from the West St. Paul leg and the remainder from South St. Paul traffic. Approximately $8,000 per year would be his gross revenue

from the South St. Paul traffic. It is obvious that the diversion of this slight revenue from respondent's lines, after deductions for expenses, including gas, oil, repairs, maintenance, and like items, would hardly sustain a finding of confiscation of respondent's properties valued in excess of ten million dollars.

In the light of the evidence outlined and the record here presented, we hold that the trial court's finding that the commission's orders appealed from resulted in a confiscation of respondent's property is not sustained.

■ . Respondent asserts that in the absence of a new trial this court can only consider whether the evidence supports the findings below. Respondent urges that the findings must be sustained if there is any evidence to support them. This expresses the rule on an ordinary appeal in a civil action tried in the district court. However, in view of the statutes governing appeals from the commission, a different rule prevails in cases of this type. The rule, as set forth in the above statute governing appeals, is that the district court's function is to determine whether the commission's order is reasonable and lawful, or whether it exceeded its jurisdiction in the light of the evidence before the commission and subsequent evidence bearing thereon received in district court.

The rule on appeal here, therefore, is not whether the evidence reasonably sustains the district court's findings, but rather whether all of the evidence presented, including the evidence submitted to the commission and the district court as. well, reasonably sustains the district court's finding that the commission's order was unlawful and unreasonable.

■ Appellant's assignments of error include the following:

"5. The court below erred in determining that the orders of the commission * * * were without sufficient evidence, were contrary to the evidence, were unreasonable, unlawful and void, and in vacating and setting aside said orders.

"6. The court below erred in determining that the order of the commission * * * denying the Bus Company's petition for a certif-

icate of public convenience and necessity and granting Rechtzigel's request for additional trips was without sufficient evidence, was contrary to the evidence, unreasonable, unlawful, and void and in vacating and setting aside said order."

In view of the governing statute, we feel that the above assignments were sufficient to challenge the court's findings here in the light of the evidence presented before the commission and before the district court.

The rule is well settled that when an action is tried by the court without a jury a party need not move for a new trial in order to secure a full review on appeal. In such cases, this court may review the sufficiency of the evidence to justify the findings and may review rulings made at the trial if properly excepted to and assigned as error, as in the instant case. See, 5 Dunnell, Dig. & Supp. § 7073c, and numerous cases cited.

We hold that, since there is reasonable evidence to support the commission's findings as to convenience and necessity and insufficient evidence to sustain the district court's findings as to confiscation, the judgment must be reversed with directions that the orders of the commission appealed from be reinstated.

Reversed.