# STATE v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

February 24, 1956.

No. 36,575.

*G. F. Fristensky* and *Drennan J. Slater,* of counsel, for appellant.
*Miles Lord,* Attorney General, and *Joseph J. Bright,* Assistant Attorney General, for respondent.

DELL, CHIEF JUSTICE.

Appeal from a judgment of the district court affirming an order of the Railroad and Warehouse Commission (hereinafter called the commission) denying the application of the petitioner, the Chicago and North Western Railway Company, for authority to withdraw its agent and to remove its depot at St. Peter, Minnesota.

---

[1] Reported in 75 N. W. (2d) 411.

On September 5, 1952, the petitioner filed an application with the commission stating that, for the purpose of economy of operation, it desired to withdraw its agent at St. Peter and to substitute, in lieu thereof, joint agent and depot service at St. Peter with the Chicago, St. Paul, Minneapolis and Omaha Railway Company (hereinafter called the Omaha). A public hearing was held on the application at which the following facts, among others, were adduced.

The city of St. Peter is served by a branch line of the petitioner which extends from Kasota to New Ulm, a distance of approximately 30 miles. The petitioner does not provide passenger coach service to or from St. Peter. The only train service through St. Peter on this branch line is a biweekly wayfreight train, which is operated in a westerly direction from Kasota to New Ulm on Tuesdays and Fridays. It does not pass through St. Peter on its return trip. The petitioner presently maintains a freight depot on its track at St. Peter with an agent in attendance Monday through Friday, eight hours each day. The petitioner also maintains a sidetrack which directly serves a machinery unloading platform and three industries located adjacent to the sidetrack. The remainder of the sidetrack is used for what is known as a team track to accommodate cars for several other industries not located on the track. From 1949 to 1951 the annual gross revenue from incoming and outgoing traffic at this station was in excess of $45,000, and amounted to over $35,000 for the first ten months of 1952. Annual station expenses for the same period averaged slightly over $4,000, most of which was attributable to the agent's salary.

A main line of the Omaha, 90 percent of whose stock is owned by the petitioner, also serves St. Peter. The Omaha maintains separate passenger and freight depots located across the Minnesota River and approximately one and one-half miles from petitioner's depot. Agency service is maintained by the Omaha from 9 a. m. to 6 p. m., Monday through Saturday.

Under the arrangement proposed by the petitioner, its depot would be removed or abandoned[2] and there would be no agent in regular

---

[2] The term "removed" appears to be used interchangeably with "retired" and "abandoned."

attendance at the petitioner's trackage. Instead, all business trans-
actions and clerical work would be handled by the agent for the
Omaha. Nearly all of these transactions would be handled at the
Omaha depot although occasionally this agent would have to drive
to the petitioner's track for inspection purposes. The present side-
track and team track facilities would remain unchanged. Full car-
load shipments would continue to be received and shipped from the
petitioner's sidetrack. However, under the proposed arrangement
all less-than-carload shipments would be routed through the Omaha
depot. In the case of outbound less-than-carload shipments to cer-
tain points, this would involve additional operating mileage.[3] There
would be no change in the present drayage pickup and delivery
service.

■ The role of the district court in reviewing an order of the
commission, as prescribed by the legislature, is to determine whether
the order is lawful and reasonable.[4] This function has received con-
siderable judicial interpretation and explanation.[5] It may be sum-

---

[3]Outbound less-than-carload shipments to points on petitioner's branch
line would be dispatched from the Omaha depot and routed via the Omaha
line to Mankato and then returned via the petitioner's train to the destina-
tion on the branch line.

[4]M. S. A. 216.25. The statute also provides that the commission's findings
of fact "shall be prima facie evidence of the matters therein stated" and
that its order "shall be prima facie reasonable."

[5]See, e.g., N. P. Ry. Co. v. Village of Rush City, 230 Minn. 144, 40 N. W.
(2d) 886; State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn.
312, 39 N. W. (2d) 752; Twin City Motor Bus Co. v. Rechtzigel, 229 Minn.
196, 38 N. W. (2d) 825; Arrowhead Bus Service, Inc. v. Black & White D. C.
Co. Inc. 226 Minn. 327, 32 N. W. (2d) 590; State and Port Authority of
St. Paul v. N. P. Ry. Co. 221 Minn. 400, 22 N. W. (2d) 569; State and
R. & W. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 297 N. W. 189;
State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294; Abrahamson v.
Canadian Northern Ry. Co. 177 Minn. 136, 225 N. W. 94; Citizens of Pipe-
stone v. Chicago, M. & St. P. Ry. Co. 167 Minn. 174, 208 N. W. 809, 209
N. W. 913; Schain v. G. N. Ry. Co. 137 Minn. 157, 162 N. W. 1079; State v.
G. N. Ry. Co. 135 Minn. 19, 159 N. W. 1089; State v. G. N. Ry. Co. 130 Minn.
57, 153 N. W. 247; Rock Island Motor Transit Co. v. Murphy Motor Freight
Lines, Inc. (D. Minn.) 101 F. Supp. 978; see, 16 Dunnell, Dig. (3 ed.) § 8082.

marized as the duel function of determining (1) whether the commission's findings of fact are reasonably supported by the evidence and (2) whether in light of such facts the order is reasonable and lawful.[6] Under this latter function the court must consider whether the order is compatible with the provisions of the Federal and State constitutions and laws and within the power granted the commission; whether the order is based on some mistake or misapplication of the law; or whether it is so arbitrary as to be beyond the exercise of reasonable discretion and judgment.[7] The scope of review of the district court has been properly likened to that of an appellate court in reviewing the findings of a jury.[8] The role of the Supreme Court is that of determining whether all the evidence presented, including that submitted to the commission as well as that submitted to the district court, reasonably sustains the district court's finding that the order of the commission is lawful and reasonable.[9]

■ Examining the record we find evidence to the effect that outgoing less-than-carload freight deliveries may involve additional time and mileage; that certain patrons would be inconvenienced in

[6]State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 39 N. W. (2d) 752; Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N. W. (2d) 825; State and R. & W. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 297 N. W. 189; State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247.

[7]State and R. & W. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 572, 297 N. W. 189, 193; State v. G. N. Ry. Co. 130 Minn. 57, 61, 153 N. W. 247, 248. See, e.g., State v. Thomson, 210 Minn. 147, 297 N. W. 715, where this court held that the denial of an application to substitute "custodian service" for part-time agency service was, under the circumstances of that case, arbitrary and unreasonable.

[8]State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 320, 39 N. W. (2d) 752, 757; State and R. & W. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 571, 297 N. W. 189, 193; Abrahamson v. Canadian Northern Ry. Co. 177 Minn. 136, 139, 225 N. W. 94, 95.

[9]State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 39 N. W. (2d) 752; Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N. W. (2d) 825; State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398. No additional evidence was submitted to the district court in the instant case.

that they would be required to drive up to a mile and a half farther through relatively heavy traffic, with increased hazards, to transact certain business with the petitioner; that there is a feeling on the part of some of the patrons that better service can be obtained from petitioner's agent than from the Omaha's agent; that cars are not properly spotted on the Omaha line; that there are obvious advantages of convenience to the industries with private facilities on the petitioner's sidetrack; and that the petitioner's agent has assisted patrons in notifying them of the arrival of cars, spotting cars, opening car doors, tracing and retrieving lost cars, receiving bills of lading at petitioner's depot, and making adjustments on freight bills. There was also some evidence that loading dock facilities are not as satisfactory at the Omaha depot as they are at the petitioner's; that considerably better potential business sites exist along the petitioner's tracks than along the Omaha, this being an important factor in attracting new business to the city; that the claimed monetary advantage to the petitioner might not in fact be realized by the proposed arrangement; that some patrons believed this petition was a first step in the eventual removal of the petitioner's line; and that in the opinion of some patrons they would not receive as good service if the petition were approved. A considerable amount of testimony was introduced to the effect that the industrial property adjacent to the Omaha line is subject to serious flood problems and that access to the Omaha station and even service over the Omaha line has been interrupted on occasions by flood waters for periods estimated up to two months; and that access to the Omaha station is restricted in tonnage during certain times of the year prohibiting some types of heavy shipments. Neither of these conditions prevail at the petitioner's depot.

We have carefully considered the evidence introduced by the petitioner showing the advantages to the railroad if the application were approved and the testimony to the effect that under the proposed arrangement there would be no material change in service. If we were permitted to judge this matter de novo we might well have approved the petitioner's application. But such is not our function.

There is evidence reasonably supporting the findings and order of the commission and, despite the fact that some of this evidence might be considered of questionable weight, in view of our limited scope of review we are compelled to hold that there is sufficient evidence to support the finding of the district court that the order of the commission is lawful and reasonable.

In view of this conclusion there is no occasion to consider the interpretation or application of M. S. A. 219.85 suggested by the respondent.

Affirmed.